Sherwood, J.
Action by plaintiff to recover of defendant city, a city of the fourth class, hydrant rentals amounting in the aggregate to $3,809.90. Plaintiff’s claim is that this amount was earned in consequence and by the performance of a contract made between plaintiff and defendant consisting of certain ordinances passed by defendant, adopted by a nearly unanimous vote of the taxpayers and accepted by plaintiff or its assignor.
Defendant denied the validity of the contract on constitutional and other grounds, and plaintiff replied. Copies of the ordinances involved will accompany this opinion.
Defendant paid the first installment of rentals for July, 1892, but after the ruling announced in the Columbia case, refused to make any more payments. Inasmuch as the constitutional questions put in issue by the pleadings herein have been in the second opinion delivered in Lamar Water, etc., Co. v. City of Lamar, 128 Mo. 188, determined against defendant’s contention by court in banc, it will not be necessary to discuss them; we proceed, therefore, to the consideration of such questions which the record contains as are open to review.
I. a. And first as to the passage on February 23, 1891, of ordinance 35, which ordinance constitutes the groundwork of plaintiff’s demand. Various objections are urged against the validity of this ordinance. It is insisted that it is invalid because passed at an unauthorized meeting of the board, in that it was not a regular meeting, and that the statutes, while giving to cities of the first, second, and possibly the third, class power to call special meetings, yet that no such power *577 is conferred by statute on cities of the fourth class. It may be granted that no such power is expressly conferred, yet it does not thence follow that such power is nonexistent. Of necessity, cities possess many powers which are not enumerated in the grant of power, and yet pass as the mere incidents and auxiliaries of those expressly granted.
Cities of the fourth class, to which defendant city belongs, have conferred upon them a great variety of powers by section 1589, Revised Statutes, 1889, among them the power “ * * * to pass such other ordinances for the regulation and police of said city, and commons thereto appertaining, as they shall deem necessary; and to pass such ordinances, not inconsistent with this article, as may be expedient in maintaining the peace and good government, health and welfare of the city* its trade, commerce and manufactories.”
As instances of such implied powers are those when a power to pass ordinances gives to the corporation, without any express grant of power, the incidental right to enforce them by reasonable pecuniary penalties. In England, as it is regarded as the duty and purpose of corporations to preserve the health and safety of the inhabitants of cities, it has always been held that reasonable regulations in regard to such object fell within the incidental authority of corporations to ordain.
Under power conferred to pass ordinances to promote the general welfare and preserve the peace, a city may fix by ordinance the time or places of holding public markets, and make such other regulations concerning them as may conduce to the public interest.
Under a general welfare clause in relation to the maintenance of the good order of the city, it has been ruled that a city may “establish all suitable ordinances for administering the government of the city, the preservation of the health of the inhabitants, and the *578 convenient transaction of business within its limits, and for the performance of the general duties required by law of municipal corporations.”
Under a general power to pass “any other by-laws for the well-being of the city,” such corporation may pass an ordinance prohibiting saloons, .etc., to be kept open after 10 o’clock at night. 1 Dillon, Municipal Corporations [4 Ed.], secs. 338, 369, 384, 393, 396, 400, and cases cited.
These authorities proceed on the evident theory of the familiar maxim that a grant of power takes with it all the necessary incidents to make that grant effectual. State ex rel. v. Walbridge, 119 Mo. 383, 24 S. W. Rep. loc. cit. 460, and cases cited.
And, as before stated, there are many implied powers which attach themselves to municipal corporations, inherent powers, which belong to them because they are municipal corporations, just as certain powers are inherent in courts because of the very nature and attributes of their organization. Thus, at common law, it is an established principle in England, that a municipal corporation may, by virtue of its inherent or incidental power, pass a by-law imposing a pecuniary penalty upon such as refuse without legal excuse an office to which they have been duly elected. And the eminent jurist and author heretofore cited indicates that even in this country, under the usual general welfare clause or under their incidental powers, municipal corporations could, by ordinance, impose a reasonable fine because of a similar refusal. 1 Dillon, Municipal Corporations [4 Ed.], section 223.
So, also, it is one of the common law incidents of all corporations to remove a corporate officer from his office for reasonable and just cause. Ibid, section 240. This principle was recognized and declared in State ex rel. v. Walbridge, supra; see, also, City v. Schoenbusch, *579 95 Mo. 618. These authorities have been instanced in reply to the suggestion of counsel for defendant that “a city can only do those things that its charter or the general statutes expressly authorize it to do." And surely no power could possess a stronger sanction of necessary implication, or could be more conducive toward “maintaining the peace and good government, health and welfare of the city" than one which enables the legal representatives of a municipal corporation to assemble in special meeting and pass such ordinance as either the exigency or expediency of the situation demands. And the authorities we find announce that among other implied powers of a municipal corporation is the one which allows a special meeting to be called upon due notice, or to be held without notice where all of the board are present, in which latter case the necessity of notice, in consequence of being waived by universal consent, is dispensed with. 1 Dillon, Municipal Corporations [4 Ed.], section 263; 1 Beach, Public Corporations, sections 268, 269. Such waiver occurred in the case at bar when ordinance 35 was passed. This being the case, it is wholly immaterial that section 132 of the ordinances of the defendant city required that should a quorum not be present, the meeting should stand adjourned till the next regular meeting.
b. Nor does it invalidate that ordinance because, as it is claimed, it was not read three times before its final passage. Section 1597, Revised Statutes, 1889, provides: “No ordinance shall be passed except by bill, and no bill shall become an ordinance, unless on its final passage a majority of the members elect shall vote therefor, and the yeas and nays entered on the journal; and all bills shall be read three times before their final passage.77 It is to be observed that the above section does not declare a sentence of nullity against a bill *580 which is not read three times before. its final passage; such declaration is altogether confined to the preceding clauses of the section, and does not apply to the last clause. Similar views were held in State ex rel. v. Mead, 71 Mo. 266, and Barber Asphalt Pav. Co. v. Hunt, 100 Mo. 22. There are authorities to the contrary, but we shall adhere to our own decisions.
c. As to the statement that the mayor was not present when ordinance 35 was passed, it will answer this objection to say that the minutes of the meeting need not affirmatively recite his presence at the meeting when the passage of the ordinance occurred. His name is signed to the instrument and attested by the clerk, and hence it will be presumed that his signature was rightfully and not wrongfully made. State ex rel. v. Mead, supra; Barber Asphalt Pav. Co. v. Hunt, supra; Rutherford v. Hamilton, 97 Mo. 543.
d. Touching the objection that the contract was not made in writing in conformity with section 3157, Revised Statutes, 1889, it is enough to' say that the ordinance having been passed as required by law, which ordinance set forth the terms of the contract, and that ordinance being approved by the requisite vote and then accepted by the person or persons proposing to build the works, constituted a completed contract. This was the ruling in Lamar, etc., Water Co. v. City of Lamar, 26 S. W. Rep. 1025, followed by the more recent decision in the same ease, as well as that in Saleno v. Neosho, 127 Mo. 627, 30 S. W. Rep. 190. Under the rigid rule established by the statute of frauds, it was not necessary, in order to make a contract binding, that it should be all contained in one paper, signed by the party to be charged; but the terms of the contract may be contained in one paper, and the signature may be found in some other paper, provided that such second paper properly refer to the terms-containing paper. Fry, *581 Spec. Perf. [3 Ed.], sec. 520. Numerous instances have occurred where letters have constituted the contract, the written evidence of and acceptance of it. lb., secs. 270, 529. It surely was never intended by the legislature that a rule of greater stringency should be applied in instances like the present, than in those just instanced.
e. And it is not true in point of fact that the ‘‘ordinance was not signed by either party to it,” because it was signed by the mayor, and he, in this regard, was the lawfully authorized agent of the city.
/. And G-uiney having accepted the proposal made hy the city in its ordinance 35, this completed the contract, as to the number of hydrants therein mentioned, and there was no necessity for the passage of ordinance 35b, which was in substance a copy of its predecessor, nor does it matter that ordinance 35b was not submitted to a vote. And it does not matter what the ■city thought of the effect of the contract entered into under the first ordinance, nor what Guiney thought or said about it. The subsequent statements of neither party to a validly entered into legal and written contract can affect or diminish its obligatory force.
II. We come now to ordinance 48, which provides for three additional hydrants. The claim is made that this ordinance is invalid on the ground that it was never adopted by a vote, etc. In our opinion such vote was unnecessary. There is an obvious difference between entering into a contract by ordinance, etc., for the erection of a system of waterworks, and the subsequent passage of an ordinance which provides for renting three additional hydrants in a system already contracted for.
III. Now, in relation to the acceptance of the works after completion, the following excerpts appear in eviidence:
*582 “Aurora, Mo., April 18,1892.

11 Aurora Water Company, Aurora, Mo.:

“Gentlemen: — In accordance with the terms and provisions of waterworks ordinance and contract, being an ordinance entitled, ‘An ordinance providing for the erection, maintenance and construction of a system of waterworks in the city of Aurora, Missouri,’ and contracting with J. Guiney, his associates and assigns, after the completion and acceptance of said waterworks system for a term of twenty years, upon the terms and conditions as provided for in ordinance number 35, passed February 23, and ordinance number 35b, passed June 9, and number 48, passed in 1891.
“These ordinances provide for sixty fire hydrants, at $60 per annum, and three additional hydrants at $45 per annum; total hydrant rental per annum, $3,735. The terms, provisions, and tests required in said ordinance have been fully complied with and the ordinances are in full force and effect.
“The hydrant rental shall commence on the eleventh day of April, 1892, and continue for a term of twenty years.
“Acceptance approved by board of aldermen this eighteenth day of April, A. D. 1892.
(Attest) “H. R. Hamilton, City Clerk.
“Accepted on behalf of Aurora Water. Company. (Attest) “---, Secretary.
“By A. L.' White, President.”
The minutes of the board of aldermen under date June 6, 1892, at page 301 of the above journal, were then introduced. (After the formal parts.) “* * * Alderman made the following motion, which motion carried by the full vote of the members -of the board present. The motion is that the board of aldermen accept the water furnished by the waterworks for fire and other public uses of the city, the amounts of pay *583 ments of water rental to be as heretofore provided by ordinance, and to date from and beginning April 18, 1892. * * *
“C. H. Babnabd, Mayor.
(Attest) “H. R. Hamilton, City Clerk.”
Then the minutes of June 20, 1892, at page 306, were read as follows: (After formal parts.) * * * “Minutes of formal meeting read and approved.” (Duly signed and attested by the clerk and mayor.) The following item, “Aurora Water Company, $772.50,” from the record of October 3, 1892, was read from page 328, as showing a payment in this amount to the water company.
The minutes of the board of July 3, 1891, at which meeting judges for election were selected and the resolution passed locating water mains and hydrants. (See above ordinance, supra.)
The report of the committee, made on the eighteenth day of April, 1892, which was appointed to inspect the location of fire hydrants, street mains, etc., was then read as follows: “The waterworks committee reported that they bad inspected tbe location of fire hydrants and street mains, and bad seen the water tests, and recommended that they be received by the city. A motion was then made that the waterworks be received, which motion was carried. A communication was presented in regard to an ordinance of acceptance of the waterworks, which was read the first time, and second and third time by title, and placed on its final passage. The vote being taken, stood: Ayes, Emmons, Prance, Westcott, and Wilson; total, four; nays, none; absent, Robinson and Gardner. * * *
“0. H. Babnabd, Mayor.
(Attest) “H. R. Hamilton, City Clerk.”
The above document addressed to the plaintiff company by Hamilton, the city clerk, was, it seems, *584 known as “the waterworks acceptance,” in reference to Avhieh the following additional entries appear:
From record board of aldermen, May 1G, 1892, page 288 and 289: “The mayor’s veto of waterworks acceptance was then brought up and the question was, shall the bill pass, the mayor’s objections hereto notwithstanding. The roll was then called, and those voting nays were: Emmons, France, Morrison, Scott, Underwood and'Wilson; total, sis; ayes, none. Another ordinance was then presented in regard to receiving the waterworks, which was read the first time, and second and third times by title, the rules suspended and placed on its final passage, and the vote being-' taken stood, ayes, Emmons, France, Scott and Wilson; total four; nays, Morrison and Underwood; total, two.”
The regular meeting of the board of aldermen, held May 2, 1892. (After formal opening.) “ * * *- His honor, the mayor, returned the waterworks acceptance without his "signature, and giving his reasons for not signing it as follows, to wit:
‘Mayor’s Office, May 2, 1892.

‘To the Hon. Board of Aldermen of the City of Aurora:

‘Gentlemen: — I herewith return a document acted upon by your honorable body .at your last meeting, with my objections thereto; this document is as follows:’ ” Then follows the letter heretofore copied, and the mayor’s objection to the same. From these proceedings it would appear that the mayor at one time approved what he afterwards vetoed. But the record in this ease is made out in such a wretched fashion that it is impossible to tell what was done. At any rate it seems that the mayor’s veto was sustained, and then another ordinance was passed in relation to receiving the waterworks. What this ordinance was, or whether it receded the mayor’s approval,does not appear. Nor does it appear that an ordinance accepting the works *585 was necessary. Bnt certainly some method should be used for the purpose indicated, and in all probability the report of a committee appointed for the purpose and reporting favorably would, on its approval by the board, be sufficient, and this it seems from the record actually occurred, before the attempted passage of the ordinance. If so, then the acceptance was complete, and could not be defeated by the failure to pass the quasi ordinance aforesaid.
IY. But if this is not so, still the city had it in its power to ratify -what had been previously done, inasmuch as ordinance 35 passed, its adoption by the requisite vote, and the acceptance by G-uiney, constituted a completed contract, one infra vires the' municipality. On this point, the learned author already cited observes: “A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the scope of the corporate poioers, hut not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals.” 1 Dillon on Municipal Corporations [4 Ed.], sec. 463.
Now here the only ratification would be with regard to the simple acceptance of the work, work done under the full sanction of legitimate authority. “Strong evidence of the assent of the corporation is not required; hut such assent must he shown.” 1 Dillon on Municipal Corporations, sec. 464.
We incline .to the opinion that there has been a sufficient ratification of the report of the waterworks committee shown, and acceptance of the works by the use of the water for such a length of time without objection and by the payment of the first installment due for hydrant rentals, amounting to nearly $800. *586 Having received the benefit of a contract fairly and lawfully made, the city should not be permitted to shirk the burden which goes hand in hand with the benefit received, by refusing to technically accept what it is perfectly willing to actually u,se. Such conduct will not be tolerated in a court of justice and we shall treat the works as accepted by the city.
Y. The last topic for discussion is the sufficiency of the petition. Such portion of it as is necessary to quote, is the following: “That heretofore, to wit: On the-day of-, 1891, the said defendant, by its mayor and board of aldermen, contracted with one J. Gruiney, his associates and assigns, giving and granting to said Gruiney, his associates and assigns, the exclusive right to furnish, by a system of waterworks, water* for the use of the city of Aurora and the inhabitants thereof for a term of twenty years. Said mayor and board of aldermen having been heretofore fully empowered and authorized to do so, by a vote, by ballot, of two thirds of the. qualified voters of said city, voting at an election held for that purpose, in the manner provided by ordinance, and that thereafter, said Gruiney duly assigned, set over and transferred all his right, title, franchise, privileges and immunities, under said contract and franchise, to this plaintiff, which proceeded to construct the said system of waterworks, as it was provided it should be done, in all things.”
Though the petition is very inartistically drawn, we regard its allegations as tantamount to a cause of action defectively stated and not a defective cause of action; in which former case its* defects can not be taken advantage of by a general demurrer or its equivalent, an objection, as in this instance, because it does not state facts, etc.
But though we regard the petition as good against general objections, yet, inasmuch as the court erred in *587 refusing plaintiff judgment as prayed, we shall reverse the judgment and direct judgment to be entered here for the amount at issue with interest thereon.
All concur.