### ROBERT H. WHITE *vs.* FRANK FITTS.

### Penobscot.    Opinion December 15, 1906.

*Work and Labor.    Oral Contracts.    Statute of Frauds.    R. S., chapter 113, section 1, clause V.*

When upon the reasonable construction of the terms of an oral contract for the performance of work or labor which does not state the time within which such contract is to be performed, it appears to have been understood by the parties thereto that the contract was not to be performed within the year, such contract comes within the statute of frauds.

An oral contract for the performance of work or labor which does not specify the time within which such contract is to be performed must be interpreted in the light of its subject matter and the circumstances surrounding it, and if the manifest intent and *understanding* of the parties thereto are that it was not to be performed within the year, such contract falls within the statute of frauds.

The plaintiff and the defendant made an oral contract wherein the plaintiff was to cut and saw into suitable lengths all the stave wood on a certain tract of land belonging to the defendant. The contract itself did not specify the time within which this work was to be performed by the plaintiff. The tract of land on which the plaintiff was to operate contained three hundred and fifty acres but about one hundred acres of the same had been cut over previous to the making of the contract. The lowest estimate of the amount of stave wood on this tract of land was 2400 cords. The capacity of the defendant's mill where this stave wood was to be manufactured was three and one-half cords per day, and the plaintiff

was to cut this stave wood only as fast as the defendant needed it for use in his mill. After operating a few weeks, the defendant refused to allow the plaintiff to operate further thereupon the plaintiff brought suit against the defendant to recover damages for breach of the contract. *Held:* that it was not the intention of the parties that this contract should be performed within a year from the making thereof and that the same falls within the statute of frauds.

Also *held* that the death of the plaintiff within the year would not have taken the contract out of the operation of the statute of frauds, for the reason that in such event the contract would not have been fully performed.

On motion and exceptions by defendant.    Exceptions sustained.

Action to recover damages for an alleged breach on the part of the defendant, of an oral contract wherein the plaintiff was to cut and saw into suitable lengths all the stave wood on a certain lot of land belonging to the defendant. The alleged breach was the refusal on the part of the defendant to allow the plaintiff to continue to cut and saw said stave wood after he had been operating a few weeks. Plea, the general issue with a brief statement alleging that the agreement was one which was not to be performed within one year from the making thereof and that there was no memorandum or note of the agreement in writing and signed by the party to be charged therewith or by any person thereunto lawfully authorized, and also that the defendant was justified in discharging the plaintiff by reason of the wasteful manner, etc., in which the plaintiff did the work.

Tried at the January term, 1906, of the Supreme Judicial Court, Penobscot County. At the conclusion of the evidence, the defendant requested the presiding Justice to direct the jury to bring in a verdict for the defendant on the ground that the contract was within the statute of frauds, and that the action could not be maintained. The presiding Justice refused to direct such verdict, but ruled, pro forma; to give progress to the case, that the action was maintainable upon oral evidence. The verdict was for the plaintiff for $500. The defendant then filed a general motion for a new trial. The defendant also excepted to the aforesaid ruling of the presiding Justice.

The case appears in the opinion.

*Martin & Cook,* for plaintiff.

*Charles H. Bartlett,* for defendant.

SITTING: WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.   This is an action to recover damages for the breach of an oral contract to cut and saw into logs the stave wood standing on a lot of land owned by the defendant.   The breach alleged is the refusal on the part of the defendant to allow the plaintiff to complete the work after he had entered upon the execution of the contract and cut a part of the wood.

In the brief statement of defense it is alleged first, that the agreement between the plaintiff and defendant set forth in the plaintiff's declaration was an oral one which was not to be performed within one year from the making thereof, and that there was no memorandum of the agreement in writing, and signed by the party to be charged therewith ; and second, that the defendant was justified in discharging the plaintiff from the work and terminating the contract by reason of the wasteful and unworkmanlike manner in which the trees were cut and felled and sawed into logs by the plaintiff.

After the introduction of the testimony the defendant requested the presiding judge to direct a verdict for the defendant on the ground that the undisputed evidence clearly showed that the contract was within the statute of frauds, because not in writing and not to be performed within one year as set forth in the defendant's brief statement, and that the action was therefore not maintainable. The presiding judge declined to order a verdict for the defendant as requested and ruled pro forma that the action was maintainable upon oral evidence.

The jury rendered a verdict for the plaintiff for $500, and the case comes to the Law Court on exceptions to this ruling of the presiding judge and also on a motion to set aside the verdict as against the law and the evidence.

In his declaration the plaintiff avers that "in consideration that the plaintiff promised the defendant to cut the timber, suitable for staves, on a certain tract of land of about 380 acres, and saw the same into logs, &c., as fast as the defendant should need the same for use in his mill, the defendant promised the plaintiff to pay him $1.00

per cord, payable weekly, for cutting all of said timber suitable for staves on said tract, &c., said timber to be cut and sawed as aforesaid as fast as the defendant should need the same for use in his said mill." In the brief statement of defense it is alleged that the plaintiff and defendant agreed that the plaintiff should enter on the land of the defendant consisting of 350 acres and there cut timber suitable for staves, &c., at the rate of $1.00 per cord as fast as the defendant should need the same for use in his mill situate on the land."

Thus it will be perceived that according to the pleadings of the parties there was no controversy in regard to the terms of the contract, and the evidence is in entire accord with these allegations in the pleadings. It was undisputed that the plaintiff was to cut down and saw into the desired lengths all of the standing timber on the 350 acres of defendant's timber land, as fast as the defendant needed it for use in his mill. There was no specifications and no further stipulations in regard to the time within which the work was to be completed and the contract performed.

The provision of the statute for the prevention of frauds and perjuries here involved is found in chapter 113 of the Revised Statutes, section 1, as follows: "No action shall be maintained . . . (V) upon any agreement that is not to be performed within one year from the making thereof . . . unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith," etc.

It is contended in behalf of the defendant that according to the principles of law governing the construction and application of this clause of the statute,

1. The contract must be interpreted in the light of its subject matter and the circumstances surrounding it, and if the manifest intent and understanding of the parties thereto are that it was not to be performed within the year, it falls within this clause of the statute of frauds.

2. Any contingency terminating a contract within the one year clause of the statute of frauds must leave the contract fully and

completely performed in order to take it out of the operation of this clause of the statute.

In Brown on the Statute of Frauds, sections 273, 279 and 281, (5th Ed.) the author says:

"Postponing the questions, what is the performance of such an agreement, and what the meaning of the limitation as to time, we are first to ascertain the force of the words '*to be* performed.' And on these words much reasoning has been expended. The result seems to be that the statute does not mean to include an agreement which is simply not *likely* to be performed, nor yet one which is simply not *expected* to be performed, within the space of a year from the making; but that it means to include any agreement which, by a fair and reasonable interpretation of the terms used by the parties, and in view of all the circumstances existing at the time, does not admit of performance according to its language and intention, within a year from the time of its making."

" The statute, *finding* them perfectly free to make a certain contract without a writing, provides simply that if that contract does by its terms, expressed, or, from the situation of the parties, reasonably implied, *require* more than a year for its performance, they must put it in writing. In other words, it must affirmatively appear from the contract itself and all the circumstances that enter into the interpretation of it, that it cannot in law be performed within the space of a year from the making." And in sect. 281, 'Where the manifest intent and understanding of the parties, as gathered from the words used and the circumstances existing at the time, are that the contract shall not be executed within the year, the mere fact that it is possible that the thing to be done may be done within the year will not prevent the statute from applying. . . . . . Such an accomplishment must be an execution of the contract according to the understanding of the parties.'

In 1st Chitty on Cont. (11th Ed.) page 99, the principle is thus stated : " This enactment applies to all contracts, the complete performance whereof is of necessity to extend beyond the space of a year; the rule being, that where the agreement distinctly shows, upon the face of it, that the parties contemplated its performance to

extend over a longer period longer than one year, the case is within the statute. Accordingly, the provisions of the statute render a verbal contract void, if it appears to have been the understanding of the parties at the time, that it was not to be *completed* within a year, although it might be, and was, in fact, *in part* performed within that period." See also A. & E. Encyc. of Law, Vol. 29, p. 94, and Cyc. Vol. 20, p. 198.

In the English case of *Boydell* v. *Drummond*, 11 East, 142, the plaintiff proposed to publish a series of illustrated scenes from Shakespeare in eighteen numbers, one number at least annually. After receiving two numbers the defendant refused to take any more. Although there was no express agreement that the contract should not be performed within a year, the court held that it was "impossible to say that the parties contemplated that the work was to be performed within a year," but that, on the contrary, "the whole scope of the undertaking shows that it was not to be performed within a year and was therefore within the statute of frauds. That decision has been confirmed by both English and American Courts in numerous cases. *Hill* v. *Hooper*, 1 Gray, 131.

In *Peters* v. *Westborough*, 19 Pick. 364, the court say: " It must have been expressly stipulated by the parties, or it must appear to have been so understood by them, that the agreement was not to be performed within a year. But who can doubt what the express and specific understanding of the parties in the case at bar was? and that it was not to be performed within one year? Or, at any rate, that it appears to have been so understood by them."

In *Doyle* v. *Dixon*, 97 Mass. 208, it was held that an agreement not to go into business in a certain place for five years was not within the statute as the death of the promisor would complete the performance of the contract, but the court, after comparing the case with *Peters* v. *Westborough*, 19 Pick. 364, say, " On the other hand, if the agreement cannot be completely performed within a year, the fact that it may be terminated, or further performance excused or rendered impossible, by the death of the promisee or of another person within a year, is not sufficient to take it out of the statute." See also *Carnig* v. *Carr*, 167 Mass. 544;

*DeMontague* v. *Bacharach*, 187 Mass. 128; *Warner* v. *Texas &
Pac. Ry.*, 164 U. S. 418; *Metropolitan Trust Co.* v. *Topeka Water
Co.*, 132 Fed. Rep. 702.

But it is needless here to attempt a separate examination and
analysis of each of the great number and variety of decisions upon
this subject in view of the fact that the correct principle has
been deduced from the authorities and the question satisfactorily
determined by the decisions of our own court.

In *Herrin* v. *Butters*, 20 Maine, 119, which has been extensively
cited, there was an agreement to clear and seed a piece of land in
three years and it was contended that the defendant might have
cleared up the land and seeded it down in one year and thereby have
performed his contract, but it was held that while this was within
the range of possibility, the contract would not be taken out of the
operation of the statute of frauds unless such a performance of it
within a year was in accordance with the understanding and inten-
tions of the parties.   In the opinion by Whitman, C. J., it is said;
"we must look to the contract itself, and see what he was bound to do ;
and what, according to the terms of the contract, it was the under-
standing that he should do.   Was it the understanding and inten-
tion of the parties, that the contract might be performed within one
year?   If not, the case is clearly with the defendant.   But the con-
tract is an entirety, and all parts of it must be taken into view
together, in order to a perfect understanding of its extent and mean-
ing.   We must not only look at what the defendant had undertaken
to do, but also to the consideration inducing him to enter into the
agreement.   The one is as necessary a part of the contract as the
other; and if either, in a contract wholly executory, were not to be
performed in one year, it would be within the statute of frauds.
Here the defendant was not to avail himself of the consideration for
his engagement, except by a receipt of the annual profits of the land,
as they might accrue, for the term of three years.   But whether this
be so or not, it is impossible to doubt that the parties to this contract
perfectly well understood and contemplated, that it was to extend
into the third year for its performance, both on the part of the

plaintiff and defendant. Its terms most clearly indicate as much; and by them it must be interpreted."

In *Hearne* v. *Chadbourne*, 65 Maine, 302, the court say : " It is true that in the absence of any words or acts of the parties, indicating the contrary, an agreement to work for a year means to work for that time commencing forthwith. The referee reports no express stipulation in the contract to overcome this presumption; but he sets out the acts of the parties showing the contemporary interpretation which both put upon it, and this places the case directly within the doctrine laid down in *Herrin* v. *Butters*, 20 Maine, 119; *Peters* v. *Westborough*, 19 Pick. 364; and *Boydell* v. *Drummond*, 11 East, 142, where the old idea that it must be expressly and specifically agreed that the contract is not to be performed within the year, as expressed in *Moore* v. *Fox*, 10 Johns, 244; and *Fenton* v. *Embler*, 3 Burr, 1278, is so far modified as to include cases where such appears to have been the understanding of the parties."

In *Bernier* v. *Cabot Mfg. Co.*, 71 Maine, 506, (1880) it was held that an oral contract wherein a laborer agreed not to leave the services of his employer for two years, nor in summer, nor without two weeks notice; is within the statute. The court say : " It was oral and was within the statute of frauds. It could not in any contingency have been fully performed within one year. The death of the plaintiff within the year, or some casualty, might have excused performance, but could not have fulfilled the contract."

In *Farwell* v. *Tillson*, 76 Maine, 227, the defendant had a government contract to furnish stone for the custom house at St. Louis, and made a verbal contract with plaintiff for the transportation of the stone from Maine to Baltimore. The government contract required defendant to furnish the stone " at such times as may be required " by the government. No time was specified. The court held that the circumstances showed that the parties did not intend or understand that the contract was to be performed within one year, and hence the contract was within the statute of frauds.

The presiding Judge instructed the jury inter alia as follows: . . . . " Was it within the understanding and intention of the two contracting parties, as declared by the contract, that it might

be performed within a year? . . . . The subject matter of a contract might be a thing which could not possibly be done within a year. A consideration of the subject matter would show just as clearly that it was not to be performed within a year, as if there was an express agreement in the terms of the contract, that it was not to be performed within a year. So, also, a consideration of the circumstances and subject matter might show that performance of it, within a year, would require such extraordinary methods, such extraordinary appliances or resources as could not by fair construction be regarded as within the intention of the parties, at the time when the contract was made; and the question is, considering the subject matter, and the situation of the parties as known to each other, and reading the contract in the light which these give, whether by fair construction, it was within the understanding and intention of the parties as expressed in the contract, that it might be performed within a year, or not." These instructions were held to be correct.

In the opinion the court say: "The meaning of the terms of a contract, it need not be said, is to be ascertained by interpreting them in the light of the subject matter to which they relate. They may mean one thing when used in reference to one subject, or by parties in one situation, and another thing when used under other circumstances in regard to another subject, and the true construction in each instance will be that which applies the contract to the res about which the parties were dealing, and reproduces the intent which they themselves have expressed in it. A description of the nature and extent of the work stipulated to be done, in the absence of express provision on the subject, may be an indispensable element in determining whether the work was by the contract to be done in a year, or whether the contract was one not to be performed in that time. It may show performance impossible in that period, or so impracticable as to be plainly beyond the scope and intent of the agreement as expressed in the language used. The duty of the defendant to deliver the granite 'at such times and in such quantities as might from time to time be ordered,' as was said in the ruling, did not require of him immediate performance, upon demand, of the whole contract. Time must be allowed to execute the work, and

the limitations upon the right of demand, which necessarily result from that fact, must apply." . . . .

"Notwithstanding dicta and some decisions, especially among the earlier cases, which tend to sustain the position assumed for the plaintiffs, we regard the rule of law as established in this State by the opinions in *Herrin* v. *Butters*, 20 Maine, 119, and *Hearne* v. *Chadbourne*, 65 Maine, 302, in conformity with the rulings which were made at the trial."

What was in the contemplation of the parties in the case at bar? What was understood by them as a matter of contract respecting the time within which the work of cutting all the stave wood on the 350 acres of timber land, was to be completed? As already seen it was not in controversy that the plaintiff was to cut the whole lot except that one hundred acres which had already been cut over and that it was to be cut only as fast as the defendant needed it for use in his mill. Before the agreement was concluded, the plaintiff went upon the lot and gave the defendant a "sample" of what he would do, by cutting for a week or more within a quarter of a mile from the mill. He was a contractor of twenty years experience, and substantially all of that time he had been engaged in the business of cutting logs and wood. Not only had the defendant explained to him in Massachusetts the nature and extent of the work, and how fast he desired to have it cut, but before closing the trade, the plaintiff entered upon the work, noted the situation and circumstances and the capacity of the mill and as a practical man must have made some estimate of the time required to complete the work. He admits in his testimony that he had "made up his mind" to live here for a year or two, "perhaps more." In answer to an inquiry by the court he says he "could finish the lot in a year and a half if it was necessary or a year for that matter." If he had been permitted by the defendant to strip the lot in violation of the agreement to cut only as fast as the wood was needed for use at the mill, it is probably true that he could have finished the work in a single year by employing a sufficient crew. But the contract did not allow him to do this, and that he so understood it, is evident from his conduct in suspending operations during July and August, at the request of the defendant, and resuming the

work September 1, when the defendant was ready to start the mill.

Four experienced lumbermen, two of them entirely disinterested witnesses testify that with a mill of the capacity of the defendant's, operated as it ordinarily was by the defendant, at least three years and probably four years would be required to complete the work. And this testimony is confirmed by a mathematical calculation based upon undisputed facts. The capacity of the mill was $3\frac{1}{2}$ cords per day. Of the 350 acres of timber land, about one hundred acres had been cut over before the plaintiff went there. The plaintiff estimated that there were 35 cords to the acre where he began to cut, and at this rate 250 acres would yield more than 8000 cords. But the minimum of all the estimates was 2400 cords, and upon this basis it would require between three and four years for this mill to saw it, as it was ordinarily operated. During the time the plaintiff was cutting in 1904 it is not in controversy that he cut at the rate of less than 1000 cords a year, and the plaintiff was satisfied with the progress of the work. Such was the practical interpretation placed upon the contract during the execution of it, by the plaintiff himself.

Considering then the terms and subject matter of the contract the nature and extent of the work to be done and the knowledge of the parties respecting the capacity of the mill and all the circumstances governing the progress of the work, the conclusion is irresistible that it was not contemplated or understood by the parties that the contract was to be performed within one year from the making of it, and that no other reasonable inference can be drawn from the testimony.

Nor would the death of the plaintiff within the year have taken the contract out of the operation of the statute of frauds, for the reason that in such an event the contract would not have been fully performed.

It is accordingly the opinion of the court that the action is not maintainable upon the evidence, and that a verdict for the defendant should have been ordered by the court.

*Exceptions sustained.*