**BLUE VALLEY CREAMERY CO. v. CON-
SOLIDATED PRODUCTS CO.** *
No. 10348.

Circuit Court of Appeals, Eighth Circuit.
Jan. 24, 1936.

*Rehearing denied March 10, 1936.

Ben Phillip, of St. Joseph, Mo. (Culver, Phillip, Kaufmann & Smith, of St. Joseph, Mo., on the brief), for appellant.

John T. Chadwell, of Chicago, Ill. (Russell Greenacre, of Chicago, Ill., and Charles H. Mayer and Floyd M. Sprague, both of St. Joseph, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an action at law brought by appellant to recover the contract price of buttermilk sold and delivered by it to appellee. On written stipulation of the parties a jury was waived and the action was tried to the court. We shall refer to the parties as they appeared below.

At the close of plaintiff's case, the court sustained a motion for judgment in favor of defendant on the ground that the contract sued upon could not be enforced because within the Missouri statute of frauds, and from the judgment entered dismissing plaintiff's action this appeal has been perfected. In reviewing the action of the lower court we shall consider plaintiff's evidence as true, and shall give effect to such legitimate inferences as may be drawn therefrom in favor of plaintiff. Smith v. Russell (C.C.A.8) 76 F.(2d) 91. So considered, the evidence may fairly be said to establish the following facts:

On August 19, 1927, plaintiff and defendant entered into a written contract by which defendant agreed to buy the entire output of raw buttermilk produced in certain creameries of plaintiff for a period of five years from March 31, 1928. Defendant agreed to pay 23 cents per hundred for the buttermilk; invoices were to be rendered for all buttermilk sold as soon after the first day of each month as possible, and defendant agreed to pay not later than the 15th of the month for all buttermilk received during the preceding month. The contract provided that in the event plaintiff should dispose of any of its plants covered by the agreement, "that either party will have the option of cancelling this agreement to the extent that it pertains to the creamery or creameries sold."

A second written contract was made by the parties, by which plaintiff agreed to sell and defendant agreed to purchase all buttermilk produced at plaintiff's creamery at Parsons, Kan., at the same price basis as the first contract, for a period of ten years. An oral agreement was entered into in 1929 or 1930, to the effect that the output of plaintiff's Kansas City plant should be included in the purchases of defendant from plaintiff.

In the fall of 1930, the market price of buttermilk declined, and defendant attempted to secure a reduction from the contract price, and on December 12, 1930, wrote plaintiff as follows: "This is to confirm our conversation with you yesterday in which we outlined the difficulties with the buttermilk business and our desire that your people allow us a price reduction of 5¢ per hundred for the year 1931 and we, in turn, will extend the present contract existing with you, expiring March 31, 1933, for another year, to March 31, 1934."

On January 12, 1931, plaintiff replied to this letter as follows: "Replying to your letter of December 12th in regard to a reduction in buttermilk price to you for the year 1931, will advise that we have taken this matter up with some of the directors of our Company and are willing to go along with you to the extent of a re-

184

duction of three cents per hundred from the original contract for the year 1931, with the understanding that the present contract will be extended another year so as to expire March 31st, 1934."

By an oral acceptance or agreement made in January, 1931, the contract was in form extended a year from March 31, 1933. As has been observed, this action was brought (1) to recover the contract price for buttermilk sold and received at all plants, except Parsons, Kan., from April 1, 1933, to September 18, 1933; (2) to recover the contract price of buttermilk received by defendant at Parsons, Kan., from April 1, 1933, to March 31, 1934; (3) to recover the contract price of buttermilk received by defendant at all plants, except Parsons, Kan., from September 16, 1933, to March 31, 1934; (4) to recover damages on account of refusal to receive buttermilk at any plant, except Parsons, Kan., from September 15, 1933, to March 31, 1934; and (5) to recover damages for refusal of defendant to receive buttermilk at Parsons, Kan., from December 17, 1933.

On this appeal it is contended: (1) That the oral contract was enforceable and not within the statute of frauds; (2) that if a writing were necessary, there was sufficient evidence of such writing; and (3) that if there were not sufficient written evidence, plaintiff was entitled to recover the contract price for the buttermilk actually delivered, since the contract was divisible and the period of performance was from month to month.

1. The pertinent parts of the Missouri statute of frauds (R.S.Mo.1929, § 2967 [Mo.St.Ann. § 2967, p. 1835]) read as follows: "No action shall be brought * * * to charge any person * * * upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized."

The construction given a state statute by the highest court of the state will, of course, be followed by this court. Midland Steel Sales Co. v. Waterloo Gasoline Engine Co. (C.C.A.8) 9 F.(2d) 250; City of Campbell v. Arkansas-Missouri Power Co. (C.C.A.8) 55 F.(2d) 560; Cargile v. New York Trust Co. (C.C.A.8) 67 F.(2d)

585; Chicago & North Western Ry. Co. v. Bauman (C.C.A.8) 69 F.(2d) 171; Davies v. Mills Novelty Co. (C.C.A.8) 70 F.(2d) 424. The Missouri Supreme Court has held that the clause of the statute under consideration applies only to contracts which, by their express terms, are not to be performed within a year, and that it does not apply to those cases in which the contract may, by its terms, be performed within the year. Foster v. McO'Blenis, 18 Mo. 88; Suggett's Adm'r v. Cason's Adm'r, 26 Mo. 221; Green v. Whaley, 271 Mo. 636, 637, 197 S.W. 355; See v. See (Mo.Sup.) 237 S.W. 795. In Delventhal v. Jones, 53 Mo. 460, the policy is declared that exceptions to the statute should be limited rather than extended. The court there said: "It has been the uniform inclination of the courts of this State—and for the most part of the courts elsewhere, both in England and in this country—to give the words of this statute full effect, and to refuse to sanction such a latitudinous construction of those words as would give rise to all the evils that the statute was enacted to prevent."

It is the contention of plaintiff that the oral agreement modified the written contract so that it would not expire until March 31, 1934, and that the clause of the contract which provided that if all of plaintiff's creameries should be sold at any time, either party might terminate the contract, took it out of the statute. The contract as so interpreted is a contract for a definite period exceeding one year, but subject to a defeasance which might terminate it within a year. The contract here under consideration differs from the contracts considered in the above-cited Missouri cases. In Foster v. McO'Blenis, the agreement was not to run carriages on a particular route; in Suggett's Adm'r v. Cason's Adm'r, the agreement was to sell a slave, with no time fixed for performance; in Green v. Whaley, the agreement between two joint owners of notes was that the notes should become the property of the survivor upon the death of the other; in See v. See, there was a lease for life. In all these cases, the time for performance was uncertain and indeterminate, while in the instant case, the contract, by its express terms, fixes a definite period for its performance, and, by its express provisions, it is not to be performed within a year.

Plaintiff urges that the rule should be applied in this case because of the possi-

bility of terminating the contract within the year. It is its contention that the performance of this contract might be accomplished in either of two ways, first, by a compliance therewith during the full term, or, second, by compliance until the option to terminate it might be exercised; the latter contingency advancing the time of fulfillment, but not operating to defeat the contract. The defendant urges that the contingency which provides for a cancellation of the contract does not transform the contract into one that may be fully performed within a year, and that it cannot be said that the agreement would be fully performed by its cancellation under such an option, but rather that such an event frustrated the performance of the contract. The statute looks to the performance and not the defeat of the contract, and a defeasance within a year would not constitute a performance according to the express intent of the parties, that performance should continue longer than a year.

It is generally held that a contract for a definite period extending over a year is not taken out of the statute by an option allowing either party to terminate it within a year. The performance contemplated by the statute is a full and complete performance, and a cancellation is not such a performance. Biest v. Versteeg Shoe Co., 97 Mo.App. 137, 70 S.W. 1081; Washington, A. & G. Steam Packet Co. v. Sickles, 5 Wall. 580, 18 L.Ed. 550; Union Car Advertising Co. v. Boston Elevated Ry. Co. (C.C.A.1) 26 F.(2d) 755, 58 A.L.R. 1067; Meyer v. Roberts, 46 Ark. 80, 55 Am.Rep. 567; Wagniere v. Dunnell, 29 R.I. 580, 73 A. 309, 17 Ann.Cas. 205; Seder v. Grand Lodge, 35 Idaho, 277, 206 P. 1052; Bernier v. Cabot Mfg. Co., 71 Me. 506, 36 Am.Rep. 343; White v. Fitts, 102 Me. 240, 66 A. 533, 15 L.R.A. (N.S.) 313, 120 Am.St.Rep. 483; Seddon v. Rosenbaum, 85 Va. 928, 9 S.E. 326, 3 L.R.A. 337; Chase v. Hinkley, 126 Wis. 75, 105 N.W. 230, 2 L.R.A.(N.S.) 738, 110 Am.St.Rep. 896, 5 Ann.Cas. 328.

Much of the confusion in considering the applicability of the statute apparently arises from failing to keep in mind the distinction between a contingency of such a nature as fulfills the obligation and one that defeats or prevents it from being performed. The one that depends upon the defeasance or matter of avoidance is within the statute, while the other is not.

Our search has discovered no decision on this particular question by the Supreme Court of Missouri, and none are called to our attention by diligent counsel. The Court of Appeals of St. Louis, in Biest v. Versteeg Shoe Co., 97 Mo.App. 137, 70 S.W. 1081, 1086, has, however, considered the question and reached a conclusion contrary to plaintiff's contention. It is there said: "The agreement between Biest and the defendant was to continue one year from the 1st day of April, and, having been signed on the 5th day of February, is within the statute, unless it is taken out by some other term. The stipulation relied on for that purpose is the privilege given to Biest to discontinue the contract on the 1st day of October following its execution, by notifying the shoe company of his intention on the 1st day of August. The question, then, is, is the agreement taken out of the statute because it contains an opinion or privilege in favor of Biest, permitting him to end it during the first year? And this question, in our opinion, must be answered by the weight of precedents directly in point, rather than by reconciling either the judgments or reasons of all the cases bearing on it. * * * But most cases are the other way, and hold a contract to render service for more than a year to be within the intention and force of the statute, notwithstanding one or both of the parties may have the option of ending it by notice in a year, because full performance cannot be rendered in a year consistently with the understanding of the parties. * * * If an agreement is to continue more than a year, with disputes concerning its terms liable to occur at any time, the policy of the law demands a memorandum in every instance, to prevent disputes and afford means of settling them correctly when they arise. But this statute is too ancient for a case to be brought within or put outside its effect by argument, and is to be enforced according to its accepted interpretation; and after looking into all the cases to which our attention was directed, or which we found during our study of this one, we feel bound to hold the contract before us falls within the statute as usually construed, and must be proved by a sufficient memorandum, for an action to lie on it."

However, we held in Hudson v. Maryland Casualty Co., 22 F.(2d) 791, 792, that decisions of the Missouri Courts of Appeal are not binding upon us in the construction of a state statute, although we

"will always give careful attention to the reasoning in their opinions."

Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 242, 77 L.Ed. 610, teaches that, "A wise comity has decreed that deference shall at times be owing, though there may be lacking, in the circumstances, a strict duty of obedience," and that considered dictum, and not comment merely obiter, "has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement." It is also there said: "The stranger from afar, unacquainted with the local ways, permits himself to be guided by the best evidence available, the directions or the counsel of those who dwell upon the spot."

We are confronted with this situation: There is apparently a conflict of authority on this question; the Supreme Court of Missouri has not passed upon it; and the rule announced in Biest v. Versteeg Shoe Co. is supported by the weight of authority.

In addition to Biest v. Versteeg Shoe Co., supra, defendant insists that the decision of the Supreme Court in Washington, A. & G. Steam Packet Co. v. Sickles, supra, should be accepted by us as controlling. In the last-mentioned case, the parties had orally contracted that the defendants should use on their boat during the continuance of the patent a device patented by plaintiffs, "if the said boat should last so long." The patent had about twelve years to run. The court held the contract to be within the statute of frauds, and, among other things, said: "It is insisted, however, that this contract is not within it, because it may, by the happening of a certain event,—the loss or destruction of the boat,—terminate within the year. The answer is, that the possibility of defeasance does not make it the less a contract not to be performed within the year. * * * It is a contract not to be performed within the year, subject to a defeasance by the happening of a certain event, which might or might not occur within that time. All the mischiefs which the statute was intended to remedy apply with full force to it."

Plaintiff insists that this case has been overruled by Warner v. Texas & P. R. Co., 164 U.S. 418, 17 S.Ct. 147, 41 L.Ed. 495. In that case the agreement was that if plaintiff would grade the ground for a switch and put on the ties at a certain point on defendant's road, the defendant would put down the rails and maintain the switch for plaintiff's benefit for shipping purposes as long as he needed it. This contract was held not to be within the statute. There is language in the opinion which might be construed as a criticism of the result in Washington, A. & G. Steam Packet Co. v. Sickles, but it is to be observed that this criticism goes to the question as to whether the court properly construed the contract. The court appears to be of the opinion that the contract in Washington, A. & G. Steam Packet Co. v. Sickles was not for a definite term, but for an indefinite indeterminate term, similar to a contract to support a man as long as he should live. The court does not, however, intimate that if the contract were correctly construed as being for a definite term, subject to a defeasance, the result was not correct, and that the law was not properly stated.

In the instant case, there can be no doubt but that the contract was for a definite term. It is noted that the contract does not in form provide that it may be canceled in toto, but that "either party will have the option of cancelling this agreement *to the extent that it pertains to the creamery or creameries sold.*" Apparently, it was not in contemplation of the parties that all the creameries might be sold, and the contract does not provide for its termination, but its "cancellation," which, we think, is inconsistent with the thought of its full performance. The oral agreement was not to become effective until two years from its date, and this implied that the written contract would not in the interim be cancelled. Otherwise, there would have been no contract to extend. During that period of more than two years, if this oral contract were to be made effective, there was no option to cancel the contract, and hence it was incapable of complete performance within a year. The oral contract contended for was not for a mere extension of the time of performance or completion of the written contract. It contemplated the completion of that contract by a delivery and purchase of the buttermilk as therein provided for and, in addition, that the terms of that written contract be extended for another year so that additional buttermilk could be delivered and purchased thereunder. This in effect was an independent oral agreement to renew a contractual relation at a time more than one year after the making of the agreement, and hence it was within

the statute, regardless of the nature of the contingency contained in the written contract. Ætna Insurance Co. v. Richey (Tex.Civ.App.) 206 S.W. 383.

It must be borne in mind that the year mentioned in the statute runs from the date when the agreement is made, and not from the date when the performance is to begin. Sharp v. Rhiel, 55 Mo. 97; Truskett v. Rice Bros. Live Stock Commission Co. (Mo.App.) 180 S.W. 1048; Keller v. Mayer Fertilizer Co., 153 Mo. App. 120, 132 S.W. 314; Reynolds v. First Nat. Bank, 62 Neb. 747, 87 N.W. 912; Chase v. Hinkley, 126 Wis. 75, 105 N.W. 230, 2 L.R.A.(N.S.) 738, 110 Am.St.Rep. 896, 5 Ann.Cas. 328. The mischief meant to be prevented by the statute is leaving the terms of a contract to memory for longer than a year. This contract, to be binding upon the parties, must have had all the essential elements of any other contract, and being oral, its terms were dependent upon the memory of those making it, and it was not to be performed until March 31, 1933, more than two years after its date.

We are of the view that the court correctly construed the contract as being within the Missouri statute of frauds, unless, as contended by plaintiff, there was a sufficient memorandum signed by the defendant to satisfy the statute.

2. Was there a sufficient memorandum to satisfy the statute of frauds? Plaintiff relies on the letters of December 12 and January 12, above quoted, together with a letter from defendant to plaintiff, dated February 19, 1931, in which defendant expresses regret that the price could not be reduced to 18 cents, "especially so since the contract was extended for another year * * *." On March 21, plaintiff's general manager wrote that the reduction had been taken up with the board of directors, who consented to the 20-cent price, and that he would not like to go against their judgment. However, he did offer to permit an additional deduction of 2 cents per hundredweight for January, February, March, and April, 1931. On March 24, 1931, defendant again wrote, asking the general manager to take the matter up with the board of directors "and see if they would not be in favor of allowing this discount to them through the entire year of 1931." On March 27, 1931, the general manager answered that he would be glad to take the matter up with the board of directors. On September 1, 1931, defendant wrote, asking for a concession of 6 cents per hundredweight between August 1 and December 31, 1931; "it being understood that such concession is not to set any precedent in the matter of your contract with us." On September 29, 1931, plaintiff wrote defendant that the board of directors "could not see their way clear to alter the terms of the contract any more than we have for this year, namely 20¢ per hundred." Defendant paid plaintiff at the rate of 18 cents per hundredweight for January, February, March, and April, 1931, and has paid 20 cents per hundredweight for the balance of 1931; payments being made by checks signed by its president. Defendant disputes the manner of payment, but as judgment was entered on motion of the defendant at the close of plaintiff's evidence, we must accept this statement as true.

Manifestly, no contract was completed by the letters of December 12 and January 12, nor did the subsequent correspondence show the terms of any contract, nor do the checks. Parol evidence would be required to piece out the letters and checks to ascertain the contract. The memorandum of the contract, to satisfy the Missouri statute of frauds, must be complete in and of itself, and parol evidence can not be admitted to piece out an incomplete writing and make it a complete instrument. Kelly v. Thuey, 143 Mo. 422, 45 S.W. 300; Allen West Commission Co. v. Richter, 286 Mo. 691, 228 S.W. 827; Crane v. Berman (Mo.App.) 297 S.W. 423; Reigart v. Manufacturers' Coal & Coke Co., 217 Mo. 142, 117 S.W. 61.

It is not necessary that the memorandum be all contained in one paper signed by the party to be charged, but the terms of the contract may be contained in one paper and the signature may be found in another paper, provided such second paper properly refer to the terms of the containing paper. Aurora Water Co. v. City of Aurora, 129 Mo. 540, 31 S.W. 946. Parol evidence is admissible to show the surrounding circumstances and position of the parties, and thus to explain the meaning and application of the descriptive language, and thereby to identify the subject-matter. Meramec Portland Cement & Material Co. v. Kreis, 261 Mo. 160, 168 S. W. 1148. It has been held that an express or explicit reference from one document to another incorporates the latter in the

former, so that they may be considered together for the purpose of determining whether the statute of frauds is satisfied. Logan v. Waddle, 315 Mo. 980, 287 S.W. 624. The memorandum must, however, show the contract between the parties and a meeting of the minds of the parties, as distinguished from mere negotiations. We think no contract was sufficiently shown by any of these writings. The reference to the extension of the contract for another year in the letter of February 19, 1931, is insufficient for that purpose. In Ringer v. Holtzclaw, 112 Mo. 519, 20 S.W. 800, 801, a writing contained this recital: "If sale is not made within 16 days from this date, Mr. Holtzclaw is to pay to Mr. Ringer the original price agreed upon between them." Of this writing, the court said: "The memorandum is wholly insufficient as evidence of a contract. It does not purport to be a memorandum of a contract. It merely refers in a vague and indistinct way to an agreement made about a price at another time. Whether that other agreement would be good must depend on whether it met the requirements of the law. When it appeared to be entirely verbal, of course it had no effect in law. All the authorities are agreed that the memorandum must state the contract with reasonable certainty, so that its essential terms can be ascertained from the writing itself, without a resort to parol evidence."

The statement that the contract was extended for another year is too vague and uncertain to satisfy the statute. An extension agreement might only alter the time for performance; it might vary some of the other terms of the agreement extended; it might be based on a new consideration, or it might not. It cannot be said from this statement that the only change in the contract was extension for a year; in fact, the contention is that the agreement was for a new contract commencing at the termination of the old. The checks relied upon are subject to the same objection to an even greater degree. They do not refer to any prior writing satisfying the requirements of the statute. The indorsement of a check given for the payment of the purchase price under a contract is a sequence to rather than a part of the contract, and cannot be considered as the equivalent of a subscription to the contract or a memorandum thereof.

3. It remains to consider plaintiff's contention that the contract was divisible, and that recovery could be had thereon to the extent of performance.

Prof. Williston, in his work on Contracts, at section 861, defines a "divisible contract." It is there said: "A divisible contract, using the term properly, is always one contract and not several contracts. It differs in one respect only from other contracts,—namely, that on performance on one side of each of its successive divisions, the other party becomes indebted for the agreed price of the division."

The contract as written, and as claimed to have been orally extended, was, we think, clearly divisible because payments for deliveries were to be made monthly. Missouri & Illinois Coal Co. v. Willis Coal & Mining Co. (Mo.Sup.) 235 S.W. 119; State ex rel. v. Dickey, 288 Mo. 92, 231 S.W. 582.

The Supreme Court of Missouri has held that where an agreement, though not in writing, has been wholly performed by one party, the other party thereto cannot interpose the defense of the statute of frauds. Self v. Cordell, 45 Mo. 345; Bless v. Jenkins, 129 Mo. 647, 31 S.W. 938; Suggett's Adm'r v. Cason's Adm'r, 26 Mo. 221; McConnell v. Brayner, 63 Mo. 461; Winters v. Cherry, 78 Mo. 344. This same rule has been applied to a divisible contract as far as there has been performance on one side. Missouri & Illinois Coal Co. v. Willis Coal & Mining Co., supra.

Defendant, recognizing the force of these decisions, insists that the performance necessary to take the case out of the statute must be within the year. This is the rule announced in Pitcher v. Wilson, 5 Mo. 46, but plaintiff asserts that this case has been overruled, citing Johnson v. Reading, 36 Mo.App. 306, 308; Marks v. Davis, 72 Mo.App. 557; Chenoweth v. Pacific Express Co., 93 Mo.App. 185; and Smock v. Smock, 37 Mo.App. 56. These cases certainly contain statements to the effect that Pitcher v. Wilson has been overruled, or at least proceed on that assumption. The Supreme Court of Missouri may not have specifically overruled Pitcher v. Wilson, but the decision in Schlitz Brewing Co. v. Missouri Poultry & Game Co., 287 Mo. 400, 229 S.W. 813, 816, is certainly inconsistent with the rule announced in the Pitcher-Wilson Case. In the Schlitz Brewing Company Case, an oral contract was made for the sale of beer for a period of ten years, and sales of beer were made under the contract for a period of six years,

when the contract was terminated by a notice given by plaintiff, of which no complaint was made. Concerning the defense of the statute of frauds, the court said: "The statute of frauds has no application. The action is for a balance due for goods actually sold and delivered. Whether or not the contract under which the parties proceeded was obnoxious to that statute by reason that it was not to be performed within a year, the beer for the price of which plaintiff now has judgment was actually received. Plaintiff had fully performed, and the statute is no defense. * * * The action is for the price of goods delivered and received under the oral contract, and the statute of frauds is not an answer."

■ This case is authority for the rule that performance by a party to an oral contract, though originally obnoxious to the statute, takes the contract out of the statute, even though the performance is not within the year. We think plaintiff was therefore entitled to recover under the contract for performance until defendant refused to go further; the contract being a divisible one, unless, as defendant contends, the performance could not be referable to the oral agreement.

Plaintiff's evidence, viewed in the most favorable light, warranted a finding that defendant received all buttermilk actually produced from April 1, 1933, to September 18, 1933, at its Chicago, Indianapolis, Louisville, Columbus, Detroit, and St. Louis plants; that it delivered all the buttermilk produced at the Kansas City plant from April 1, 1933, to September 18, 1933, to Western Milk Products Company on written orders of defendant, and sent bills therefor to defendant. At Sioux City, plaintiff delivered all of the buttermilk produced at that plant to Borden Products Company on written order of defendant, and sent bills therefor to defendant. Plaintiff proved that all buttermilk produced at Cleveland was hauled by defendant, except for a day or two, when defendant's plant was broken down and the buttermilk was run down the sewer. At Milwaukee, in March, 1932, defendant closed its plant and notified plaintiff it would have to pour the buttermilk down the sewer, which plaintiff did to October 31, 1933, and defendant paid to April 1, 1933. At Cedar Rapids, defendant closed its plant in June, 1931, and directed plaintiff to sell all of the buttermilk it could and run the remainder down the sewer, which plaintiff did until March 31, 1934. Defendant paid for all of this buttermilk up to March 31, 1933. The written contract provided that defendant was to call for and get buttermilk in plaintiff's tanks each day, and in no event would defendant allow buttermilk to stand in plaintiff's tanks for a longer period than forty-eight hours, or if plaintiff's tanks became full in less than forty-eight hours, defendant would remove the buttermilk on three hours notice. Upon failure to remove the buttermilk as agreed, defendant was to pay plaintiff for buttermilk it might be forced to run down the sewer.

But defendant insists that there was a denial of any extension in January, 1932, in a conversation between Mr. Lewis, president of defendant, and Mr. Vansant, plaintiff's general manager, and hence it is argued that the deliveries of buttermilk were not received by defendant under the contract. The testimony is that Mr. Lewis told Mr. Vansant he would like to get a reduction in the price for the remainder of the contract, and Mr. Vansant said: "Mr. Lewis, you are asking for a great deal; this contract has about two and one-half years yet to run." Mr. Lewis then said: "No, the contract expires in 1932." Mr. Vansant then said that it did not, and Mr. Lewis replied that was his understanding, whereupon Mr. Vansant said he would get the file and they would go over it. Mr. Lewis then said: "No, let's pass that up, let's talk about for the year 1932 then."

Defendant made no payment for the buttermilk it received during the period from April 1, 1933, to the time when it stopped taking buttermilk.

■ Performance being relied upon by plaintiff to take the case out of the statute of frauds, it was incumbent upon it to show facts that may reasonably be said to be an expectation that the other party would perform. Parke & Barron v. Leewright, 20 Mo. 85; Often v. Stout, 97 N. J.Eq. 122, 127 A. 677; Woodworth v. Franklin, 85 Okl. 27, 204 P. 452, 27 A.L.R. 590.

■ As plaintiff is entitled to have the most favorable inference drawn from the evidence that is reasonably possible, we are of the opinion that the evidence is not sufficient as a matter of law to charge plaintiff with notice that defendant denied the extension of the contract. There was an acceptance of the buttermilk at several of

the plants. At others it was run down the sewer, consistent with the contract. The conversation above set out is too equivocal to amount to notice that the contract was repudiated. The nonpayment of · the price while taking the buttermilk is not inconsistent with the existence of the contract. We think, on the record, it cannot be said as a matter of law that there was a repudiation of the contract. The right of plaintiff to recover the contract price for the buttermilk actually delivered is dependent upon whether deliveries were made by plaintiff and accepted by defendant under the contract, and as this question has not been determined, the judgment appealed from must be reversed and the cause remanded for further proceedings consistent herewith.