**ROTHSTEIN et al. v. EDWARDS.**

No. 8412.

Circuit Court of Appeals, Ninth Circuit.

Nov. 27, 1937.

Rehearing Denied Dec. 31, 1937.

make deal with you will go through with same can draw up contract my arrival meantime figuring deal confirmed.

"M. H. Rothstein."

Later Edwards and Rothstein met in the law offices of Edwards' attorney and discussed plans and terms of a guarantee and the attorney presented a draft of a proposed written contract. Wide differences developed and the meeting broke up without accomplishment. No guarantee was ever given and Edwards sold the crop of asparagus for less than the price mentioned in the telegram. He brought suit for the difference upon the theory that the two telegrams constitute a written contract, and was awarded the judgment mentioned.

■ The judgment cannot stand for the reason that the telegrams record no complete agreement between the parties. Rothstein's answering telegram is inconsistent with the theory that it is an unconditional acceptance of an offer made by Edwards' telegram. It was an assurance that the price was satisfactory and that a guarantee would be arranged when they should later meet to "draw up" a contract. It was a personal assurance that Rothstein was as good as his word and would go through with the deal in good faith.

■ There is nothing in this answering telegram to the effect that he would buy "all asparagus shipped" as Edwards' telegram recited; instead Rothstein carefully specified "all bunch asparagus." Rothstein's telegram did not meet the very material proviso upon which Edwards' offer was based, that (quoting from the telegram) "* * * providing satisfactory bank guarantee is [would be] given immediately that all drafts against shipments will be paid." He merely assured Edwards that the subject would be covered but he did not assent to a bank guarantee and he did not assent to the peremptory requirement indicated by the word "immediately" nor to the indefinite requirement indicated by the word "satisfactory." Unconditional acceptance is a condition precedent to the existence of a contract. Williston on Contracts (1936) § 666A.

The concluding expression in Rothstein's telegram "meanwhile figuring deal confirmed" must be read in connection with all of the rest of the message, and giving it the widest possible application and also giving the parol exception its broadest applica-

Torregano & Stark, of San Francisco, Cal. (M. C. Symonds, of San Francisco, Cal., of counsel), for appellants.

Dinkelspiel & Dinkelspiel and David Lener, all of San Francisco, Cal., for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a judgment entered on a jury verdict in the sum of $7,504.02 in favor of the plaintiff in an action for breach of a written contract.

After oral negotiations between Mr. M. H. Rothstein, one of the defendant co-partners, and George N. Edwards, receiver for the Golden State Asparagus Company, for the purchase of a crop of asparagus, Edwards telegraphed Rothstein, who had gone from California to Seattle, Wash., as follows:

"Will confirm sale to H. Rothstein and Son all asparagus shipped from Golden State Asparagus Co. up to and including Apr 10 34 $2 per crate f. o. b. cars Isleton providing satisfactory bank guarantee is given immediately that all drafts against shipments will be paid wire answer 801 Jones Avenue Oakland

"Geo N. Edwards Receiver
"Golden State Asp. Co."

Rothstein replied by telegraph as follows:

"Answering will arrange guarantee payments all bunch asparagus price mentioned expect return San Francisco last this week or first next week don't worry when we

tion, still we would search the transcript in vain for evidence that "satisfactory bank guarantee" has such a definite meaning that it could not be varied by individual opinion. Indeed the evidence would affirmatively show as wide a difference between the parties upon that subject as could well be imagined.

There was evidence introduced at the trial to the effect that "shipping" asparagus is of the same quality that goes into "bunch" asparagus; but shipping asparagus may be either loose pack or tied in bunches. The parties concede that "bunch" asparagus is divided into several classes requiring selection for each class according to standard requirements. As one witness puts it

"According to the custom and usage of the asparagus trade, the term 'bunch asparagus' has a definite meaning. It means the best asparagus, segregated from the field run of asparagus, with culls, hooks and crooks and broken tips discarded, and consists of so many spears to each bunch. There are five different grades of bunch asparagus."

"Each grade of bunch asparagus has a different specification, different sizes of each stalk, color, length and so many stalks to the bunch."

All of this, of course, adds to cost.

The evidence did not go so far as to support the claim that the phrase "all asparagus shipped" as used in the context of Edwards' telegram, was synonymous with the trade expression "shipping asparagus."

Of course, parol evidence may be resorted to to explain ambiguities but as it is put in Blue Valley Creamery Co. v. Consolidated Products Co. (C.C.A.8, 1936) 81 F.2d 182, 187, 188, "parol evidence cannot be admitted to piece out an incomplete writing and make it a complete instrument." There would need be much "piecing out" in this case in addition to explaining ambiguities to make a "complete instrument" out of these two telegrams.

It is our conclusion that the telegrams do not constitute a contract. Robbins v. Pacific Eastern Corporation (Cal.Sup.1937) 65 P.2d 42, 60.

The defendant made a motion in the trial court for a directed verdict which the court denied. It should have been granted. Wristen v. Bowles, 82 Cal. 84, 22 P. 1136.

Judgment reversed and remanded.

### On Petition for Rehearing.

DENMAN, Circuit Judge.

My concurrence in the conclusion reached in this case and in denying the petition for rehearing should be expressed as follows:

The parties are agreed that the asparagus shipments, from the Golden State Company of the crop referred to in the telegram from appellee, include shipments of both asparagus tied in bunches and untied and loose in crates. Appellee's telegraphic offer to appellants reads:

"Will confirm sale to H. Rothstein and Son all asparagus shipped from Golden State Asparagus Co. up to and including Apr 10 34 $2 per crate f. o. b. cars Isleton providing satisfactory bank guarantee is given immediately that all drafts against shipments will be paid wire answer 801 Jones Avenue Oakland

"Geo N. Edwards Receiver
"Golden State Asp. Co."

The guaranty to be given by appellants is a guaranty that "*all* drafts against *shipments* will be paid." The guaranteed "shipments" obviously were to be "all asparagus shipped"; that is, both bunched and loose. There is no ambiguity in the phrase "all asparagus." It would vary and not explain the proposal to prove the sender meant less than "all."

Appellants' purported telegraphic acceptance does not accept this offer. In effect, it makes a new proposal, namely, to guarantee only the shipments of *"bunch"* asparagus. It did not cover the loose asparagus of the appellee's offer. It is as follows:

"Answering will arrange guarantee payments all bunch asparagus price mentioned expect return San Francisco last this week or first next week don't worry when we make deal with you will go through with same can draw up contract my arrival meantime figuring deal confirmed.

"M. H. Rothstein."

Since the suit is based solely upon the claim that this exchange of telegrams constitute a contract, and since they do not constitute an offer and acceptance within the offer's terms, there was nothing to go to the jury. It should have been instructed to bring in a verdict for the appellants-defendants.

Petition for rehearing denied.