## Case No. 1,371.

### In re BETTS.

[4 Dill. 93;[1] 15 N. B. R. 536; 7 Reporter, 522; 4 Cent. Law J. 558; 24 Pittsb. Law J. 195.]

Circuit Court, E. D. Missouri. March Term, 1877.

BANKRUPTCY—HOMESTEAD — JURISDICTION OF THE BANKRUPTCY COURT—STATUTE OF FRAUDS.

1. Where a sale is made, under deed of trust, of a bankrupt's property on which he resides, and the proceeds are insufficient to satisfy the debt thereby secured, so that the right of homestead is cut off, the bankruptcy court has jurisdiction to order the bankrupt to deliver possession of the property to the purchaser, without driving the latter to a suit in ejectment.

2. In equity, a mortgage or deed of trust is only a lien on the land, and an agreement to extend the time of payment of a debt so secured is not within the statute of frauds, and need not, therefore, be in writing.

[In bankruptcy. In the matter of Betts.] This was an appeal from a decision of the United States district court for the eastern district of Missouri, sustaining a demurrer to the bankrupt's answer to a petition of Calvin F. Burnes for an order on the bankrupt to deliver possession of certain property. [Reversed.]

The facts are stated in the opinion of the court, orally pronounced, as given below.

William R. Walker, for petitioner.
M. Kinealy, for respondent.

DILLON, Circuit Judge. The material facts in this case are briefly these:

Some years ago, about the year 1870, the bankrupt, Betts, purchased a house and lot in this city, 2929 Olive street, of the petitioner, Calvin F. Burnes, and secured a portion of the purchase money by deed of trust, with power of sale by a trustee, on default of payment. The interest was payable at the end of each period of six months. In 1876 Betts was adjudicated a bankrupt, this mortgage debt to Burnes remaining unpaid. Burnes came into the court of bankruptcy, proved his debt as a secured claim, and afterwards applied to the district court, without any express notice to the bankrupt, and on the record here, I may say, without any notice (as the demurrer admits the allegation of the bankrupt in this behalf) of his intention to apply for an order permitting the trustee to sell the property; and such an order ·was passed by the district court. Thereupon the trustee advertised the property for sale under the deed of trust, and it was sold and purchased by the beneficiary, Burnes, for the

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 7 Reporter, 522, contains only a partial report.]

sum of five thousand dollars. The sale was reported to the bankruptcy court; the assignee being advised of it, and consenting to its confirmation, it was confirmed, and the trustee and assignee, by the direction of the district court, joined in executing a deed under the trustee's sale, to the beneficiary, for the property.

The property was occupied by the defendant as a homestead. Afterwards, the defendant remaining in possession, and refusing to deliver possession to the purchaser, Mr. Burnes, the latter filed his petition in the district court in the bankruptcy proceeding, setting forth the facts which I have stated, and asking that an order issue from that court to the bankrupt to deliver the property to him, or to appear and show cause why he should not be thus ordered. Thereupon, the order to show cause was served on the bankrupt, and he appeared in the district court and filed an answer to the effect: First. Denying the jurisdiction of the district court in the matter, alleging that this property was his homestead, and therefore it was exempt under the bankrupt act, [March 2, 1867, 14 Stat. 517, c. 176;] that this property was not an asset of the estate that passed to the assignee in bankruptcy, and that the district court as a court in bankruptcy had nothing to do with it, and had no power to make an order in respect of it. Second. The answer in substance is this: "I executed my note payable with interest semi-annually, at the end of each six months; and that subsequently Mr. Burnes, the beneficiary, and myself made this arrangement, viz: Mr. Burnes says, 'If you will pay the interest in advance on this loan, I will agree to extend the principal of the debt that long,' and he agreed to it;" and then he alleges that he has paid the interest in advance on this debt, and had before this sale paid it in advance down to and beyond the first day of November, 1877, whereby the principal sum of that debt was extended to that time, and therefore the debt was not due at the time when the trustee undertook to exercise the power of sale in this case. He does not allege that that agreement was in writing.

The petitioner, Burnes, filed a demurrer to that answer; and that demurrer was, pro forma, sustained by the district court, and an order entered on the bankrupt to surrender possession of the property to the petitioner, Burnes.

From that order the bankrupt brings the case into the circuit court for revision.

The first question is whether, in a case like this, the bankruptcy court has any jurisdiction to make an order of this kind. If, as in many of the states—for example, the state of Kansas, and perhaps many other states—the homestead law exempted the entire property occupied as a homestead from sale on execution, or from liability to pay the general debts, I should very much

incline to think it would follow that the bankruptcy court would have nothing to do with it, because the bankrupt law in that event exempts that property from all liability to pay the debts; exempts it in express terms from the property which passes by virtue of the assignment to the assignee; and I think I so held in one case in Kansas, to which counsel referred.

But counsel agree that the homestead act in Missouri is different. There is not unlimited exemption of the homestead in this state, but there is exempt in the city of St. Louis a homestead not exceeding in value $3,000; so that, if this property had been worth $15,000, and the debt was $8,000, and it was sold for the sum of $15,000, the first $8,000 would go to the mortgagee, the bankrupt debtor would be entitled to the $3,000 as homestead exemption, and the remainder would be a fund for the benefit of creditors.

It is quite evident that here was an estate which came into the possession of the assignee in bankruptcy. Now, how is the bankruptcy court to pay the debtor unless the bankruptcy court can take possession? The effect of bankruptcy is in reality an execution for the benefit of creditors generally. Unless the bankruptcy court can take possession of that property and sell it, how can it be determined, except by agreement of parties, whether there is anything in the homestead property which belongs to the general estate?

I am of the opinion, therefore, that the bankruptcy court had jurisdiction to inquire into this matter, these parties having gone in there, although Mr. Burnes may not have been obliged to go in and prove up his debt. He has contested the matter in the district court, and submitted to its jurisdiction. The district court had power to take just such proceedings as it did in this matter; and having the power to order this sale, and the sale having been made and confirmed by it, I think, on reflection, the district court is not so shorn of power as to be unable to make that jurisdiction effective; and if the bankrupt should refuse, on a proper sale being made, to deliver possession, I think the court could order it, and would not be obliged to drive the purchaser to an action of ejectment, or to a new suit. That question has heretofore been before me, and I had some doubt about it; but I believe I decided it in the same way, and it came before Mr. Justice MILLER, and it was stated by counsel and TREAT, District Judge, that he ruled the point in the same way.

Now, as to the next question: if, after this debt was created and the mortgage recorded, and the transaction consummated, at a distinctly subsequent period, the parties agree, as is alleged in the answer that they did agree, to this effect, viz.: the creditor saying, "If you will pay me interest in advance I will extend the principal of the debt," and it was accordingly paid and he received the

money, under that agreement the debt would be extended; but if the debt was not due at the time when this power of sale was exercised, nothing would pass by the sale. The power of sale must be strictly exercised, and unless it has arisen, nothing will pass by it. The only point really argued before me in avoidance of this was, it ought to appear here in the answer of the bankrupt that this agreement was in writing, because, the counsel says, "Here is a deed of trust on real estate, and any agreement of that kind that has reference to real estate is within the statute of frauds, and must be evidenced by writing." I know there is one good answer to that—perhaps two. That agreement is set up here, and admitted by demurrer; but, whether that is so or not, the view of the modern law is that a mortgage is, in realty—at least in the view of a court of equity—nothing but a lien; that the creditor here has nothing but a lien on this property for the security of his debt; [the benefit of the estate is in the mortgagor.][2] The main thing here is the debt.

I do not think it is necessary that an agreement to extend a debt should be in writing. If this was verbal, and the creditor received the interest in advance down to November, 1877, this debt was not due. If it was not due, the trustee had no power of sale, and the order of the district court that the trustee might sell, made when the bankrupt had no notice of it, would not conclude him.

It is true for some purposes a bankruptcy proceeding is a unit, and for some purposes a bankrupt may be considered as always being in court; and, accordingly, the supreme court of the United States, in the case decided only a few days ago, on the point as to the jurisdiction of the district court, as well as on the point I am now considering, in the case of Conro v. Crane, [94 U. S. 441,] say: "It must now be considered as settled that appeals do not lie to this court from the decisions of the circuit courts in the exercise of their supervisory jurisdiction under the bankrupt law. At the present term, in Wiswall v. Campbell, [93 U. S. 347,] we held that 'a proceeding in bankruptcy, from its commencement to its close, upon a final settlement of the estate, is but one suit. The several motions made and acts done in the bankruptcy court in the progress of the cause are * * * but a part of the suit in bankruptcy, from which they cannot be separated.' And again: 'Every person submitting himself to the jurisdiction of the bankruptcy court in the progress of the cause for the purpose of having his rights in the estate determined. makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding.' "

In Sandusky v. First Nat. Bank, 23 Wall. [90 U. S.] 293, the court decided: "Any order

[2] [From 15 N. B. R. 536.]

made in the progress of the cause may be subsequently set aside and vacated upon the proper showing made, provided rights have not become vested under it which will be disturbed by its vacation." In that case the assignee in bankruptcy sold certain property to one man, and the sale being reported to the district court it was confirmed; and when the assignee demanded the money, $40,000, the purchase price, the purchaser would not pay it. He reported this fact to the district court, and stated further, "Parties offer me $40,500 for this property;" and the district court said, "You may make a sale of it to them," and ordered the sale made and the property delivered to them. A month afterwards the first purchaser went into the bankruptcy court, and asked an order to set aside the sale as against the persons in possession. The district court refused to do it. An appeal was taken to the circuit court, or a petition for review filed. The circuit court reversed the order of the district court, and ordered the property to be given to the first purchaser, and the district court to pay the money to the second purchasers. That was the case which was taken to the supreme court of the United States, and it dismissed the case for want of jurisdiction, holding that the judgment of the circuit court, whether right or wrong, was conclusive, and that no appeal lay.

This shows a case where there were two purchasers in the bankruptcy court contesting for the property, and that court allowed it to be contested in the bankruptcy proceedings, instead of remitting the parties to independent actions. That has a bearing, in relation to the first point, as to the jurisdiction of the court. It has some bearing also on the question that may arise in reference to the second point. I am of opinion, therefore, that the return to the order to show cause—so far as the second branch of that defence is concerned—assuming the facts to be true, as the demurrer admits, is a good ground of defence, and that the demurrer ought, as to that point, to have been overruled.

The question on going back will be: Should the district court, sitting as a court of bankruptcy, entertain this proceeding? I think it has jurisdiction to do it, in its discretion; and if a traverse is made there—if it is denied any such agreement was made, and proofs have to be taken—then the district court, sitting in bankruptcy, may hear and determine that, or it may say, "we will leave the parties to their ordinary remedies." Because, as we have seen, if the district court takes cognizance of the case as part of the bankruptcy proceedings, its action may be reviewed by the circuit court. But that is the end of it, no matter if the property may be worth a million of dollars; whereas, if the district court drives the party to an ordinary suit, the appellate court is open. He can bring it in the federal court, and if it amounts to more than $5,000, he can go through all

the stages of regular litigation to the supreme court.

Judgment below, which is understood to have been pro forma, is reversed, and process will issue to the district court to proceed in such manner as it may be advised. Reversed.