34 So.2d 313

**LAND et al. v. COOPER et al.**

2 Div. 239.

Supreme Court of Alabama.

Feb. 26, 1948.

Adams & Gillmore, of Grove Hill, for appellants.

Scott & Porter, of Chatom, and W. H. Lindsey, Jr., of Butler, for appellees.

SIMPSON, Justice.

The appellees are substituted plaintiffs, as the heirs and administrator of L. M. Cooper, the original plaintiff, who died in-.testate after instituting this litigation to enforce a redemption in lands owned by his intestate father, W. P. Cooper, who predeceased L. M.

This is a second appeal and proceeds from the decree of the trial court overruling demurrer to the bill as last amended. The first appeal is reported in 247 Ala. 397, 24 So.2d 436, where some pertinent facts and principles of law were reviewed.

The case made by the bill is: W. P. Cooper mortgaged the lands in 1934 to Robert Land, the mortgage maturing November 1, 1934. Default, however, was not declared at maturity of the debt by any proceedings to foreclose, and on October 28, 1937, the mortgagor, W. P. Cooper and wife, and Robert Land entered into a written contract (exhibited) to sell to Long-Bell Lumber Company 666,000 feet of timber for a cash consideration of $2,000, with an additional option of the lumber company to cut more timber at $3.00 a thousand feet. The $2,000 was paid to Land on the mortgage debt and the contract provided that should the company exercise its option to cut the additional footage, the first $700, with interest from the date of the contract, accruing from the additional cutting should be paid to Land in satisfaction of the balance of his mortgage debt and the remaining accruals should thereafter be paid to W. P. Cooper. The option of the lumber company to harvest the additional timber was for a period of five years from the date of the contract, October 28, 1937, and the timber contract, as averred, "was entered into at the request of respondent, Robert Land, for the purpose of paying and satisfying the said mortgage indebtedness and for the further purpose of arriving at and agreeing upon the balance due on said indebtedness by the said W. P. Cooper * * * the maturity date of said mortgage was on said date, to-wit, October 28, 1937, extended by the respondent, Robert Land, for five years from October 28, 1937 * * * and that the respondent, Robert Land, did on said date, to-wit, October 28, 1937, agree with W. P. Cooper not to foreclose said mortgage until five years from said date * * *."

W. P. Cooper died intestate in 1938, survived by his widow and ten children, including the plaintiff son, L. M. Cooper. Land, in disregard of the alleged extension agreement, foreclosed his mortgage August 23, 1939, becoming the purchaser at the foreclosure sale, though the lumber company had the right until October, 1942, to exercise the option to cut the additional timber which was ample in supply to furnish sufficient returns to pay off the balance of the mortgage.

L. M. Cooper filed this suit August 14, 1941, to set aside the mortgage foreclosure as void because prematurely made and to enforce his equity of redemption as an heir of his dead father, W. P. Cooper, or,

in the alternative, should the foreclosure be declared valid, he offered to do equity and to redeem from the foreclosure sale by paying the amount legally due. Pending this suit, and in 1941, this original plaintiff, L. M. Cooper, died intestate and the present appellants, who are his heirs and personal representative, have been substituted as plaintiffs and seek to carry on the litigation.

It is quite clear from a study of the first Land v. Cooper case, supra, that the only aspect of the bill containing equity is that which seeks to set aside the mortgage foreclosure sale as prematurely made and to enforce the equity of redemption. We have again accorded studious consideration to the principles declared in the first case and are convinced that the holdings announced are sound. It results, therefore, as we shall first show, that the phase of the bill seeking to enforce the statutory right of redemption on the part of the substituted plaintiffs is without equity and the decree of the trial court holding to the contrary must be reversed.

The opinion on the first appeal took note of the unwavering line of decisions of this court, the last being Land v. Cooper, 244 Ala. 141, 12 So.2d 410, that the statutory right of redemption was a personal privilege and not property nor the right of property, was therefore not descendable and being only a personal privilege and not a property right, "L. M. Cooper's statutory right of redemption died with him, and a bill pending at the time of his death, seeking to exercise that right was abated by his death." 247 Ala. 400, 24 So.2d 439. The suit as well as the cause of action therefore abated at the death of the original plaintiff and was not the subject of revival under the law as it then existed.

The argument is advanced by learned counsel that Act No. 708, H. 276, Gen.Acts 1947, p. 543, averts the operation of the principle in the present litigation and gives this phase of the bill equity. The contention cannot be sustained.

The pertinent provisions of the Act are:
"Section 1. All suits pending in a court of equity shall survive in favor of and against the heirs, successors, or personal representative of any deceased party to such suit.

* * * * * *

"Section 3. This Act shall become effective upon its passage by the Legislature and approval thereof by the Governor and shall apply to all suits now pending in a court of equity as well as those hereafter instituted therein. * * *"

Manifestly the Act cannot operate on a suit or cause of action which had been abated by operation of law years before its enactment, for the suit, when the Act came into existence, was not then pending as a justiciable cause of action. The action and the right to maintain it, as observed in the opinion on the first appeal, died with the original plaintiff and on his death was then abated, and a later enactment could not give them life. In analyzing the statute's application, the distinction between the survival of the action and the cause of action (Wynn v. Tallapoosa County Bank, 168 Ala. 469, 490 et seq., 53 So. 228) is unimportant since the suit, as well as the right of action, ceased and terminated by the death of the only one who at that time had the right to transact it, and no subsequent legislation could have revived or possibly given life to such a status. 12 Corpus Juris 977, § 570; 16 C.J.S., Constitutional Law, § 264, points up the correct principle where it is said that "it is beyond the power of the legislature to revive an action which has abated prior to the passage of the statute."

One constitutional objection to the application of the statute here is immediately apparent, without considering any other.

When the case ended on the death of the plaintiff (L. M. Cooper) the right to maintain it also ended and was then extinguished. The two-year statutory right of redemption had then long since run and a full title to the property, unfettered by any such right, at that time vested in Robert Land as absolute owner. No retrospective legislation could effectively enfetter that title by taking away from Land the absolute ownership by reviving the dead right. To permit such would be an invasion of the plainest sort of property rights and unlawfully divest an owner of

title to real estate. This is inhibited by the due process clause of § 1, Fourteenth Amendment and Fifth Amendment of our Federal Constitution.

Counsel, to sustain the application of the statute, argue that the act is only procedural, "merely prescribes a remedy for enforcement of a right." But this is the point that marks the line of distinction between statutes which are merely remedial and those which impair vested property rights. There are cases (see Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483) which take the ground that a right incapable of enforcement for want of a remedy or because there is some obstruction to the remedy may be so aided by legislation as to become the proper ground of valid action; as there are also cases affirming the constitutionality of statutes which merely lift a statutory bar to restore a remedy lost through lapse of time where such lapse had not invested the adverse party with title to the property (Campbell v. Holt, supra; Chase Security Corporation v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628); but in the instant case there was no barred right upon which the remedy could operate when the statute was enacted. On the contrary, that right had long since expired—was extinguished, in foro contentioso—when Cooper (L. M.) died six years previously to its passage, whereupon Land's title had immediately vested and become absolute, a property right the invasion of which the Constitution forbids.

There is no legislative power to arbitrarily recreate a right or liability already extinguished by operation of law, the rights and obligations of the parties having become fixed before the law's change. Pepsin Syrup Co. v. Schwaner, D. C., 35 F.2d 197(3); Massingill v. Downs, 7 How. 760, 766, 48 U.S. 760, 766, 12 L. Ed. 903; Phoenix Joint Stock Land Bank of Kansas City v. Dewey, D.C., 8 Fed.Supp. 678; In re Erickson, D.C., 18 F.Supp. 439; Bradley v. Lightcap, 195 U.S. 1, 24, 25, 24 S.Ct. 748; 753, 49 L.Ed. 65, 75, 76.

The argument is also advanced that the substituted plaintiffs—the grandchildren of W. P. Cooper—are entitled under § 727, Title 7, Code 1940, to assert the statutory right of redemption as the heirs of their grandfather. The contention is unsustainable. These children of L. M. Cooper were the heirs of their father, who was living at the time of W. P. Cooper's death, and are not the heirs of their grandfather. White v. Fowler, 245 Ala. 209, 16 So.2d 399.

It remains only to consider the insistence that the primary aspect of the bill seeking to set aside the mortgage foreclosure as prematurely made and to enforce the equity of redemption was without equity because the parol agreement to extend the payment of the balance due on the mortgage was unenforceable as within the statute of frauds in that by its terms it was not to be performed within one year from the making thereof. Code 1940, Title 20, § 3(1).

The scope of the bill. as to this aspect of the relief prayed for must be determined by its allegation and the object sought to be attained (McKenzie v. Stewart, 196 Ala. 241, 245, 72 So. 109) and a fair interpretation of the allegations in that respect is that the timber contract embracing the payment of the $2,000 cash to Land on the mortgage debt and the stipulation to pay the balance of $700 and interest due from the first cutting under the option agreement to be exercised at any time within five years after the original 666,000 feet had been harvested, was with the understanding and agreement of the parties to the timber contract that the balance due on the mortgage debt should be so extended until the option should be exercised and the balance of the debt satisfied. It is clear to our minds that while the duration of the alleged extension agreement could have embraced the period of five years, it was not impossible of performance within a year from its making and therefore not within the statute of frauds. While the lumber company was given a period of five years to exercise the option, it was not beyond the possibility of being exercised within the year, so that the balance of the mortgage debt could have been satisfied.

An oral contract which is capable of performance within a year does not fall

within the prohibition of the statute. Downing v. Williams, 238 Ala. 551, 191 So. 221; Christie v. Durden, 205 Ala. 571, 88 So. 667.

 In order to bring a particular oral contract within the influence of this clause of the statute, there must be a negation of the right or possibility to perform it within a year, that is, by its terms it is not to be or is incapable of being so performed. Brown & Sons Lumber Co. v. Rattray, 238 Ala. 405, 192 So. 851, 129 A.L.R. 526, note, page 534; 37 C.J.S., Frauds, Statute of, § 42, note 68.

In Brown & Sons Lumber Co. v. Rattray, supra, this court approved the statement from 25 R.C.L. 454, § 29, that to bring a contract within the operation of this clause of the statute there must be an express and specific agreement that it is "not to be performed. within the space of a year; if the thing may be performed within the year, it is not within the statute, a restricted construction being given to the statute on account of the negative form of the provision. A contract is not brought within the statute by the fact that the full performance within a year is highly improbable, nor by the fact that the parties may not have expected that the contract would be performed within the year. This is said to be true if there is a possibility of its being performed within a year, and there is no stipulation that it shall not be so performed." (238 Ala. page 410, 192 So. page 854) See also Restatement, Contracts, § 198, p. 262.

We also observe the following statement pertinent to the facts here alleged in 37 C.J.S., Frauds, Statute of, § 48: "Although by the terms of an oral agreement a period in excess of a year may be allowed for its performance, yet if on the happening of a certain stipulated event which may happen within a year it can be completely performed consistently with the rights and understanding of the parties thereto, it will not be regarded as within the statute."

The case of Dent Lumber & Shingle Co. v. Cedarhome Lumber Co., 141 Wash. 593, 252 P. 141, rested on facts bearing some analogy to the situation here presented where there was an oral agreement to extend the time of payment under a contract of purchase of a mill for a period of two years or longer if necessary, payment to be made from the sale of products from the mill. The court held the contract enforceable though not in writing, since the contract was of the sort subject to be paid off at any time, stating that the test is "not the expected duration of the contract but the necessity of the duration being beyond the year." 252 P. 142; 37 C.J.S., Frauds, Statute of, § 48.

For other cases of similar import see Yates v. Ball, 132 Fla. 132, 181 So. 341(8); Blue Valley Creamery Co. v. Consolidated Products Co., 8 Cir., 81 F.2d 182(6); Standard Oil Co. v. Denton, Ky., 70 S.W. 282(1).

We have confined discussion of the statute to the one point argued and have considered no other aspect of the question, such as the validity in equity, vel non, of parol agreements to extend the payment of a mortgage or contract. Cf. 97 A.L.R. page 795, note; In re Betts, Fed.Cas. No. 1,371, 4 Dill 93; Wolkowsky v. Kirchick, 81 Fla. 415, 88 So. 261; Moses v. Woodward, 109 Fla. 348, 360, 140 So. 651, 141 So. 117, 147 So. 690; Kransz v. Uedelhofen, 193 Ill. 477, 62 N.E. 239; Larose v. Porter, 87 N.H. 241, 177 A. 297; Hawkins v. Hayward, 191 Minn. 543, 254 N.W. 809; De Groot v. McCotter, 19 N.J.Eq. 531; Tompkins v. Tompkins, 21 N.J.Eq. 338; Dodge v. Crandall, 30 N.Y. 294; Fish v. Hayward, 28 Hun, N.Y., 456; Arnot v. Union Salt Co., 186 N.Y. 501, 79 N.E. 719; Syracuse Trust Co. v. First Trust & Deposit Co., 141 Misc. 603, 252 N.Y.S. 850; Zastrow v. Knight, 56 S.D. 554, 229 N.W. 925, 72 A.L.R. 379; Phillips v. Holland, 149 Wis. 524, 136 N.W. 191; Siegel et al. v. Knott, 316 Mass. 526, 55 N.E.2d 889.

We have also kept in view the distinction between contracts covering a period of more than a year but subject to termination within the year, which are generally held to be within the statute on the theory that complete performance of the contract is contemplated and a cancellation

is not such a performance (Blue Valley Creamery Co. v. Consolidated Products Co., supra, 8 Cir., 81 F.2d 185; Marble v. Town of Clinton, 298 Mass. 87, 9 N.E.2d 522, 111 A.L.R. 1101; Biest v. Versteeg Shoe Co., 97 Mo.App. 137, 70 S.W. 1081; Washington, Alexandria & Georgetown Steam Packet Co. v. Sickles, 5 Wall. 580, 18 L.Ed. 550; Union Car Advertising Co. v. Boston Elevated R. Co. 1 Cir., 26 F.2d 755, 58 A.L.R. 1007; Wagniere v. Dunnell, 29 R.I. 580, 73 A. 309, 17 Ann.Cas. 205; Seder v. Grand Lodge, 35 Idaho 277, 206 P. 1052; Bernier v. Cabot Mfg. Co., 71 Me. 506, 36 Am.Rep. 343; White v. Fitts, 102 Me. 240, 66 A. 533, 15 L.R.A.,N.S., 313, 120 Am.St.Rep. 483; Seddon v. Rosenbaum, 85 Va. 928, 9 S.E. 326, 3 L.R.A. 337; Chase v. Hinkley, 126 Wis. 75, 105 N.W. 230, 2 L.R.A.,N.S., 738, 110 Am.St.Rep. 896, 5 Ann.Cas 328), and contracts which, though extending for a period of more than a year, are capable of complete performance within the year, which are held to be outside the bar of the statute. Such distinction was noted in the Blue Valley Creamery Co. case, supra, 81 F.2d page 185, where it was said: "Much of the confusion in considering the applicability of the statute apparently arises from failing to keep in mind the distinction between a contingency of such a nature as fulfills the obligation and one that defeats or prevents it from being performed. The one that depends upon the defeasance or matter of avoidance is within the statute, while the other is not."

The contract presently before us for interpretation falls within the latter class and is therefore without the bar of the statute.

It results from these considerations that the allegations of the primary aspect of the bill to set aside the premature foreclosure of the mortgage and to enforce the equity of redemption were not subject to the demurrer interposed, but the decree giving equity to the alternative aspect of the bill seeking to assert the statutory right of redemption was laid in error.

Affirmed in part and in part reversed and remanded.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.