L. G. RILEY, a Proprietorship, and d/b/a Riley Enterprises, Plaintiff,

v.

CAPITAL AIRLINES, INC., a Delaware Corporation, Defendant.

Civ. A. No. 2083.

United States District Court
S. D. Alabama, S. D.
June 28, 1960.

———◆———

Groves C. Hillard, Mobile, Ala., for plaintiff.

T. Massey Bedsole, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for defendant.

DANIEL HOLCOMBE THOMAS, District Judge.

This is an action for breach of an oral contract allegedly entered into between L. G. Riley, a proprietorship and d/b/a Riley Enterprises, plaintiff herein, and Capital Airlines, Inc., defendant herein. The plaintiff seeks to recover by this action for merchandise, goods and chattels delivered to the defendant pursuant to the alleged contract, and in addition, seeks the recovery of damages for breach of the contract.

The contract which is the basis of this action is alleged to have been entered into the latter part of August 1956, by and between L. G. Riley and Victor H. Luecke, an employee of Capital Airlines, Inc. The plaintiff contends that he was given a five-year contract, with an option to renew, to supply water methanol to the defendant at its Mobile, Alabama, terminal for use in its turbo-prop jet aircraft.

The defendant denies that it entered into a five-year contract with the plaintiff at any time, and avers that all purchases made by it from the plaintiff were made pursuant to its Blanket Purchase Orders. The defendant further contends that if there was a contract

between the parties, this action is barred by the Alabama Statute of Frauds.

Having considered the evidence, the major portion of which consisted of the testimony of witnesses, and the arguments of counsel, the Court, now, after due deliberation, makes the following findings of fact and conclusions of law:

### Findings of Fact

1.

During the latter portion of 1955, Capital Airlines was obtaining water methanol[1] from various independent vendors throughout its national system of operations. As a general rule, these vendors were located in the immediate vicinity of the particular air terminal to be supplied. The plaintiff was one of these vendors and was located in the Mobile area. The only terminal supplied by the plaintiff was Capital's terminal at Bates Field in Mobile.

The plaintiff was approached by Bill Linthicum, manager of the defendant's terminal at Bates Field, during the latter portion of 1955, in order to ascertain if the plaintiff would be interested in supplying the local terminal with water methanol. These negotiations were verbal, and as a result thereof the plaintiff agreed to supply the mixture according to defendant's specifications. Although a five-year contract was discussed at this time, the plaintiff does not contend that the contract which is the subject of this litigation was made during the initial negotiations.

Subsequent to these discussions with Lithicum, the plaintiff purchased the equipment and materials necessary for the production of water methanol.[2]

2.

In April 1956, the plaintiff received a blanket purchase order number from the defendant company. Prior to the actual receipt of the blanket purchase order form itself, Riley began making deliveries and invoicing to the defendant the amount of each delivery. Upon the receipt of the invoice, the defendant would pay the plaintiff for each separate delivery. Each delivery would be received and receipted by the defendant's agent, Linthicum; and each invoice referred to the blanket purchase order number issued by the defendant.

3.

The plaintiff made deliveries under the above-described purchase order until August of 1956, without any demand for or reference to, a five-year contract. At that time, Victor H. Luecke, who was assistant superintendent, assistant line maintenance for Capital, made a routine inspection of the defendant's terminal facilities at Bates Field. It was on this occasion that the plaintiff contends the five-year contract was made between himself and Luecke, on behalf of Capital. Luecke testified that he did not meet nor talk to Riley on this particular inspection trip.

Consequently, the plaintiff's evidence supports the contention that a five-year contract was executed between the parties, and the defendant's evidence is to the contrary.

4.

Shortly after the August inspection, Riley purchased an additional tank to be used as a storage tank for the finished

---

1. Water methanol is a mixture of demineralized water and methanol (or methyl alcohol, commonly referred to as wood alcohol) which is utilized by jet-powered aircraft to assist in becoming airborne. The ratio of mixture is approximately 45% methyl alcohol to 55% demineralized water.

2. In April of 1956, Riley purchased one 6,000 gallon tank, lined with epoxyresin, for the purpose of storing water methanol at his warehouse. At the same time, thirty 16-gauge steel drums with double phenolic linings were obtained for transporting and storage of the product at Bates Field. (The mixture was carried in the drums from Riley's warehouse by trucks to the airport and would remain there until used.) A water demineralizer was also purchased. These items cost $2,431.78 and were purchased prior to the time the contract, which is the basis of this action, was allegedly entered into between the parties.

mixture of water methanol at Bates Field. This tank was mounted on a saddle structure provided by the defendant and was used exclusively by the defendant.

The plaintiff continued to furnish methanol under the original blanket purchase order, and the procedure as to invoicing for deliveries was in no way altered.

### 5.

In March 1957, Luecke came to Mobile for the express purpose of examining the substance of the water methanol being furnished by Riley. Riley's facilities were inspected and minor changes in the equipment were suggested. These changes were made by the plaintiff at the defendant's expense.

After this particular visit, Riley purchased a third tank which was to be used to transport the finished mixture from his warehouse to the airport, but which in fact was never used in any capacity.

The plaintiff continued to furnish water methanol under the original blanket purchase order until January of 1958, when he received another blanket purchase order similar in form to the original except for the fact that the numbers differed.

### 6.

In July 1957, Luecke advised the plaintiff that Capital was going to terminate its current system of obtaining water methanol from numerous vendors and was going to establish five-year contracts with a small number of suppliers who would supply a greater area. The plaintiff was invited to submit a bid for this contract in the Southeastern United States area, which bid he subsequently submitted in writing on October 21, 1957. His bid for the area was rejected, and another bidder was awarded the contract.

Riley was notified on July 2, 1958, that the blanket purchase order under which he had been operating would be canceled as of September 1, 1958. The purchase order was in fact canceled, and the plaintiff filed this action shortly thereafter.

### 7.

Supplying and storing water methanol was not the plaintiff's usual business; there was no other market for the product in the Mobile area; and the mixture was made exclusively for Capital according to its qualifications and specifications. The plaintiff has not sold the product to any other buyer except the defendant, and the equipment procured by him has not been subsequently used for any other purpose.

### 8.

The complete cost of securing the necessary equipment to produce and store the mixture amounted to $3,418.15.[3] The three tanks have been sold on an approval basis to a third party for $700. Therefore, the only damage, if any, to which the plaintiff would be entitled for the loss of expenditures for equipment amounts to $2,718.15.

### 9.

 The Court is of the opinion that the facts when considered as a whole sustain the plaintiff's allegation that a five-year contract was made between the parties. Therefore, I find as a matter of fact that Capital Airlines, Inc., entered into a five-year contract with L. G. Riley whereby the latter was to supply the former with water methanol according to its demands and specifications.

Having reached the conclusion that there was in fact a contract between the parties, there remains for the Court to determine whether or not this action is barred by the Statute of Frauds of the State of Alabama.

---

3. This amount was derived from the following figures as shown in defendant's exhibit No. 1:

Total cost of 3 tanks ........$1,971.13
Total cost of drums .......... 423.52
Cost of demineralizing equipment ...................... 827.71
Cost of pump ............... 97.63
Air compressor ............. 98.16
Total ....................$3,418.15

## Conclusions of Law

### I.

Diversity of the parties and the requisite amount gives the Court jurisdiction of this cause. 28 U.S.C.A. § 1332.

### II.

The Statute of Frauds of Alabama states in part:

"In the following cases, every agreement is void, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing:

"(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof." Title 20, Code of Alabama, 1940, section 3.

At first impression it would appear that the contract here in question falls within the statute and should therefore be unenforceable because it is obvious that it was not to be performed within the period of one year. Land v. Cooper, 1948, 250 Ala. 271, 34 So.2d 313; Restatement of Contracts, Section 198, page 262. However, the plaintiff contends that the agreement does not fall within the purview of the statute inasmuch as the agreement is a contract for the sale of goods and should not be barred under Title 57, Code of Alabama of 1940, section 10. That section states:

"Statute of frauds.—(1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in his behalf. (2) * * *; *but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply * * *.*" (Emphasis supplied.)

It is the plaintiff's theory that since the water methanol was manufactured specially for the defendant and was not suitable for sale to others in the ordinary course of plaintiff's business, the five-year contract comes within the statutory exemption and is enforceable. While this theory is plausible, I do not believe it applicable to the facts of the present case for the reason that here each specially mixed delivery of water methanol was paid for separately by the defendant upon receipt of the plaintiff's invoice. This was not a case of goods being specially manufactured followed by a subsequent breach by the buyer, as was the case in the landmark decision of Goddard v. Binney, 115 Mass. 450, 15 Am.Rep. 112, wherein a contract to build a carriage to the buyer's specifications was held to fall outside the statute of frauds of the Sales Act. Although it is true that in the instant case the plaintiff manufactured the product exclusively for the defendant and according to its specifications, there was no product or item manufactured in its entirety for delivery five years from the date of making the contract. The plaintiff mixed the product when the defendant requested it; each order was delivered, invoiced, and paid for separately. I think that as to each delivery there was a contract which fell outside the statute of frauds and was thus enforceable to the extent that it was executed. Howard v. Mercury Record Corporation et al., 5 Cir., 1949, 178 F.2d 449; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 5 Cir., 1959, 264 F.2d 751.

### III.

The unexecuted or executory portion of the five-year contract falls within the purview of the Alabama statute of frauds and is unenforceable. Howard v. Mer-

cury Record Corporation et al., supra. To hold otherwise would be to defeat the very purpose for which the statute was devised, that is, the prevention of frauds which may be accomplished by setting up contracts of the interdicted class by parole testimony.

## IV.

■■ There is no basic difference in the policy of Title 20, section 3, and Title 57, section 10, of the Code of Alabama of 1940. Both of these sections were devised for the prevention of fraud in contracts. It would be a fallacy to hold that one section permitted the enforcement of a contract, and at the same time find the identical contract to be unenforceable under another section of the Code. Clearly, this was not the legislative intent. The Court therefore concludes as a matter of law that both sections of the Alabama Code are applicable to the contract here in issue, and that said contract is enforceable under both sections of the Code to the extent that it has been executed between the parties. It follows that the unexecuted portion of the contract falls within the statute of frauds and is unenforceable in an action at law for damages resulting from the breach thereof. Howard v. Mercury Record Corporation et al., supra.

## V.

■ The plaintiff contends that the doctrine of part performance removes the contract from the effects of the statute of frauds. I cannot concur in this view. In Franklin v. Matoa Gold Min. Co., 8 Cir., 1907, 158 F. 941, Judge Philips, in an excellent discussion on the statute of frauds, states on page 947:

"There is much of illogical assertion by courts touching this question of part performance. In many cases there is an utter confusion of part performance and entire performance. Of course, when a contract is performed on both sides there is no longer a contract to be executed and enforced. In such case the statute of frauds has no application. Without pursuing this question, it is suf-

ficient to say that both the weight of reason and authority is that the doctrine of part performance by the buyer, such as paying the purchase price, and the like, obtains only in equity and has no place in an action at law founded on the contract for damages."

In Farrow v. Burns, 1922, 18 Ala.App. 350, 92 So. 236, 237, it is stated that:

"Whatever may be the law in other states, in this jurisdiction the partial performance of a contract, void under the statute of frauds, does not take it from under the influence of the statute (Conoly v. Harrell, 182 Ala. 243, 62 So. 511; Scoggin v. Blackwell, 36 Ala. 351), so as to permit a recovery under the contract for any part of the contract remaining executory."

Consequently, part performance does not take the executory portion of the contract herein from the purview of the statute of frauds.

## VI.

■ By its petition the plaintiff seeks recovery for "merchandise, goods and chattels sold by the Plaintiff to the Defendant on the 1st day of September, 1956, said merchandise, goods and chattels to be delivered over a period of five (5) years up to and including the 1st day of September, 1961, for which the Defendant now refuses to pay, * * *." The evidence is uncontradicted that the plaintiff received payment for each delivery of the product; therefore, there is nothing due the plaintiff on the executed portion of the contract, and inasmuch as the executory portion of the contract is void under the statute of frauds, the plaintiff is entitled to recover nothing for the breach of the parole agreement by the defendant. Shannon v. Wisdom, 1911, 171 Ala. 409, 55 So. 102.

## VII.

The Court finds as a matter of law that the plaintiff is not entitled to damages for breach of the contract because the statute of frauds of the State of

Alabama bars enforcement of the executory portion thereof.

## VIII.

The plaintiff has purchased expensive equipment in order to fulfill adequately the provisions of the contract. While under the above-expressed views I do not think the plaintiff entitled to recover damages for breach of the executory portion of the contract, I am of the opinion that he should be compensated for the loss in equipment which was purchased in good faith pursuant to the defendant's specifications. In the landmark case of United States v. Behan, 1883, 110 U.S. 338, 344, 4 S.Ct. 81, 83, 28 L.Ed. 168, Mr. Justice Bradley, speaking for the Court, said:

"Unless there is some artificial rule of law which has taken the place of natural justice in relation to the measure of damages, it would seem to be quite clear that the claimant ought at least to be made whole for his losses and expenditures. So far as appears, they were incurred in the fair endeavor to perform the contract which he assumed. If they were foolishly or unreasonably incurred, the government (defendant) should have proven this fact. It will not be presumed. The court finds that his expenditures were reasonable."

Justice Bradley states further on page 345 of 110 U.S., on page 84 of 4 S.Ct.:

"As before stated, the primary measure of damages is the amount of the party's loss; and this loss, as we have seen, may consist of two heads or classes of damage—actual outlay and anticipated profits."

The expenses for equipment incurred by the plaintiff were incurred in the fair endeavor to perform the contract which he assumed; consequently, he is entitled to recover the loss of these expenditures which the Court finds were reasonable. The defendant has failed to prove that the expenses were foolishly or unreasonably incurred.

Reasonable expenditures incurred by the plaintiff in anticipation of a valid contract were the purchases of the three tanks, the storage drums, the demineralizing equipment, a pump, and an air compressor. These items were obtained at a cost of $3,418.15. Inasmuch as the tanks in question have been sold for $700, I find the plaintiff is entitled to recover the amount of $2,718.15, as the loss in expenditures which were incurred in a fair endeavor to perform the contract.

In accordance with the foregoing, judgment shall be entered for the plaintiff and costs of these proceedings taxed against the defendant.