ON REHEARING EX MERO MOTU
This Court's opinion of September 30, 1988, is withdrawn, and the following opinion is substituted therefor:
We granted permission to James K. McBride, individually, and as executor of the estate of Ellen Jane McBride, to appeal from an interlocutory order of the trial court granting the defendant's motion in limine to prevent the admission of an affidavit of a deceased grantor regarding the non-delivery of a deed (purportedly delivered 12 years before the affidavit was executed) in an action seeking cancellation of that deed. See Rule 5, A.R.App.P.
On June 13, 1967, Ellen McBride executed a warranty deed to her brother, Darmer McBride, Sr., and his wife, Trannie P. McBride. The conveyance purported to transfer title to a 5/7 interest in 80 acres of land and to reserve a life estate in Ellen McBride. At the time the deed was executed, Ellen McBride was 70 years of age and unmarried. On or about October 10, 1967, the conveyance in question was recorded in the Probate Court of Lawrence County, Alabama. Darmer McBride, Sr., however, had died the previous month, on September 6. Trannie P. McBride died on November 11, 1979. Apparently, on or about June 11, 1979, Ellen McBride executed the pivotal affidavit, wherein she denied the delivery of the deed and further contended that there had been certain conditions subsequent regarding the transfer of the property to Darmer McBride, Sr., that were never carried out. Her affidavit was recorded the same day of its execution, in the Probate Court of Lawrence County. Her affidavit further stated that she received nothing of value from Darmer McBride, Sr., or Trannie McBride in connection with the conveyance, and that she was not indebted to them or their heirs or personal representatives. In 1975, Ellen McBride was admitted to the Nursing Convalescent Center in Decatur, and she remained there until her death on October 23, 1984. Therefore, all parties to the deed transactions are now deceased.
On January 17, 1986, the devisees of the last will and testament of Ellen McBride filed a declaratory judgment action seeking an adjudication that the deed executed on June 13, 1967, by Ellen McBride was invalid because of lack of delivery, absence of *Page 156 
consideration, and non-performance of certain conditions subsequent. When the plaintiffs attempted to offer evidence of the affidavit to make out a prima facie case of non-delivery, the trial court sustained the defendant's objection to its admission on grounds that it was ex parte and self-serving, but did certify that this was a proper case for an appeal of its interlocutory order. The plaintiffs have no other testimony as to the facts concerning the non-delivery of the deed, and disposition of this evidentiary question will be determinative of the outcome of the litigation.
The plaintiffs argue that the affidavit in question is admissible under Code 1975, § 35-4-69 and § 35-4-70:
 "§ 35-4-69. Affidavits — Record as notice of facts recited; by whom made.
 "Affidavits heretofor recorded or that may hereafter be recorded showing the relationship of parties or other persons to conveyances of lands, the relationship of any parties to any conveyances with other parties whose names are shown in the chain of title to lands, whether or not any person or persons connected with the chain of title were married at the time of the execution of any conveyances, the ages of any person or persons connected with the chain of title, whether the lands embraced in any conveyance constituted a part of the homestead of any grantor, whether the lands embraced in any conveyance have been in the actual possession of any parties connected with the chain of title to either the surface or mineral rights of lands, or any other persons; and affidavits relating to the identity of parties whose names may be shown differently in chains of title; and affidavits showing the ownership and adverse possession of lands, that other persons have not owned such lands nor been in possession of same, that there is no outstanding dower interest in said lands; and affidavits stating any other fact or circumstance affecting title to land or any right, title, interest in or lien or encumbrance upon land, when so recorded, the record of said affidavits shall be notice of facts therein recited; and any such affidavit may be made by any person whether connected with the chain of title or not.
 "This section shall apply to affidavits heretofore or hereafter made whether the same were made in connection with any particular transaction or merely to perfect title to land.
"§ 35-4-70. Same — Admissibility as evidence.
 "In any litigation over any of the lands referred to and described in any of such affidavits, in any court in the state of Alabama or in any proceedings in any such court involving the title to such lands, wherein the facts recited in such affidavits may be material, the said affidavits or certified copies of the record thereof shall be made admissible as evidence of the facts therein recited and shall be sufficient to prima facie establish such facts. The said affidavits or certified copies thereof shall only be admissible as evidence in the event the parties making the affidavits are deceased, are nonresidents of the state, their residence is unknown to the parties offering the affidavits or such parties are too old, infirm or sick to attend court."
We do not agree with the plaintiffs, however, that the affidavit is admissible under §§ 35-4-69 and -70; and a close look at these Code sections demonstrates both the accuracy and the wisdom of this interpretation. First, the phrase "to perfect title" is the more proper way to express what is commonly called "to clear title" (technically, "to clear title" is a contraction for the more complete expression "to clear clouds from the title or defects in the title"). The instant lawsuit seeks to change ownership of the property by having the court declare that the grantor never delivered the deed to the grantees. This is a far cry from seeking to "perfect title," as that term is commonly used in property law. Rather, this suit seeks to have the court declare void a recorded deed under which the grantees possessed, without contest, the property for many years. If, during the grantees' lifetime, a prospective buyer had obtained an abstract of title, no cloud or *Page 157 
defect would have appeared in the record of title.
Moreover, the additional terms "affecting title" and "involving the title," in the context in which they are used in the statutes, have reference to, and have the same import as, the phrase "to perfect title." Title to property either requires perfecting or not, according to the substantive allegations and proof in the litigation; and the operative effect of these "affidavit" statutes is not invoked by the mere filing of a suit seeking to revoke a conveyance of that title, the legal effect of which conveyance, "until judicially declared to be void" has fixed the title in the grantees.
Second, a reading of § 35-4-69 as a whole makes it clear that the "factual" matters contained in the subject affidavit to not come within any of the specifically enumerated "facts" (i.e., ages and relationships of persons connected with the chain of title, length and dates of possession, etc.) of the statute. Rather, the affidavit, disavowing delivery of the deed, on the one hand, and claiming that the grantees failed to comply with certain conditions subsequent, on the other hand (two "factual" assertions that are self-contradictory), falls under the "any other fact or circumstance affecting title to land" language of the statute. If this language is read and interpreted in isolation, assuming its constitutionality, one concludes that the trial court erred in not admitting the affidavit. But if this language is read in the context of the entire statute and interpreted with due process considerations in mind, a different result obtains consistent with the trial court's ruling.
The statutory data that may be included in the affidavit consist of objective, historical facts necessary to clarify, or to make certain, subsequently raised questions affecting title to land. Clearly, the statute lists factual information that, if lost or otherwise made unavailable by the passage of time, would threaten the stability and certainty of land titles. Construed in this context, the "any other fact or circumstance" language of § 35-4-69 appears not to be intended to change the nature and character of the information specifically authorized. Moreover, to hold otherwise is to allow parties to speak from the grave to impugn their own acts and conduct and thus to alter long-established legal conclusions incident thereto. If broadly interpreted to embrace all litigation involving title to property, §§ 35-4-69 and -70 would be rendered irreconcilably unconstitutional. Allowing a witness to speak from the grave to disturb and unsettle title to property, where the only "cloud" on that title is the very litigation based on the deceased's affidavit, would violate the most basic requirements of due process of law. Conversely, the application of a narrow interpretation meets the beneficial purpose of §35-4-69 and does not violate the constitutional mandate of due process.
In light of the interpretation of § 35-4-69 and § 35-4-70
adopted in this case, Lavett v. Lavett, 414 So.2d 907 (Ala. 1982), is overruled to the extent that it is inconsistent with this opinion, and the trial court's order granting the defendant's motion in limine to prevent the admission of the affidavit of the deceased grantor is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
MADDOX, JONES, SHORES, HOUSTON and STEAGALL, JJ., concur.