Charles H. Stephens appeals from a judgment in favor of Helen Stephens, in her capacity as successor trustee of an inter vivos trust created by her husband, Roger Stephens, Charles's brother. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
In 1985, brothers Roger and Charles entered into a partnership agreement to develop a shopping center in Birmingham; Roger held a 75% interest in the partnership and Charles had the remaining 25% interest. The partnership incurred a $450,000 debt, resulting from two loans it had acquired from NBC Bank to construct the shopping center.
In 1988, Roger sought to develop some property in Florida; however, he was unable to obtain financing for this project because of the liabilities he had incurred as a partner in connection with the Birmingham project. In November 1988, Charles agreed to terminate the partnership agreement and to assume all existing debts of the partnership, including the $450,000 NBC Bank debt and all future debts incurred on the Birmingham project, so that Roger could obtain financing for the Florida project.
In further consideration for obtaining Roger's interest in the partnership, Charles executed a $60,000 promissory note to Roger; under the terms of the note, Charles was to pay $1500 per month, with $500 of the payment being applied to the interest on the unpaid balance and the remaining $1,000 of the payment being applied to the principal. The note further provided: "Charles H. Stephens, at his sole election, may pay only the $500 monthly interest in lieu of the total monthly payment due."
In November 1988, Roger created an irrevocable trust for the benefit of his two children, *Page 331 
with Charles's promissory note serving as the trust res. Roger designated John Sudderth as the trustee. The terms of the trust gave Sudderth the power: to determine whether any net increase or decrease in the value of the trust res should be assigned to income or principal; to determine whether any money or property coming into the trust should be deemed principal or income; and to extend the term of any note held as part of the trust res.
In January 1989, Roger, Charles, and Sudderth, in his capacity as trustee, agreed to an oral modification of the payment terms of the promissory note. The parties agreed: (1) that Charles would not have to make payments on the note until the Birmingham project realized a positive cash flow; and (2) that Charles could pay any amount that he was able to, based on the cash flow of the project, with the first $500 of any such payment being applied to interest and the remainder of the payment being applied to the principal. Roger died in April 1989. Although the project failed to realize a positive cash flow from January 1989 through June 1995, Charles made periodic payments on the promissory note from November 1988 to June 1994.
Sudderth served as trustee from November 1988, until he resigned in September 1994. Upon his resignation as trustee, he filed with the trial court a final accounting, which showed that Charles had made payments totaling $32,000 on the promissory note, with $7500 being applied to the interest and the remaining $24,500 being applied to the principal. Also included in Sudderth's accounting was a "Reconciliation of Principal and Interest on Note," which stated that the net principal due on the note was $35,500; that the interest due on the note was $27,500; and that the total due on the note was $62,500. At the time of Sudderth's resignation and accounting, the promissory note was in default. Following the trial court's approval of Sudderth's accounting and his resignation as trustee, Helen Stephens was appointed successor trustee; she sued Charles to recover on the promissory note, alleging that the note was in default in the amount of $60,515.84, plus interest. Charles answered that the payment terms of the note had, by agreement, been modified and that he had paid in excess of $29,000 on the note.
Following an ore tenus proceeding, the court entered the following judgment in favor of Helen Stephens:
 "This case came on for bench trial, whereafter, the Court allowed parties time to supply additional proofs.
 "At issue are a Promissory Note and a Trust Agreement. The Note, Trust Agreement and trustee's final accounting standing alone, do not support the position of the plaintiff.
 "The Dead Man's Statute would serve to exclude the Trustee's testimony which might tend to explain or bolster defendant's position.
 "Further, taking into consideration the instruments on their face, giving leeway for the Parol Evidence Rule, tempered by the Statute of Frauds, this Court has no choice but to find for [the plaintiff] and against defendant Charles H. Stephens and damages are assessed in the amount of Sixty Five Thousand Eight Hundred Seventy-Two and 25/100 Dollars ($65,872.25)."
Charles appeals, contending that the court erred in relying on the Dead Man's Statute, the parol evidence rule, and the Statute of Frauds.
We note that "in a non-jury case, the trial judge is the finder of fact, and a presumption of correctness attaches to his findings and to the judgment based on these findings."Kennedy Co-Op, Inc. v. Bell, 644 So.2d 18, at 18 (Ala.Civ.App. 1994). The judgment of the trial court, in such a case, will not be disturbed on appeal unless it is manifestly unjust, palpably wrong, or not supported by the evidence. Id.
Over Helen's objection, the trial court allowed Sudderth to testify about the oral modification of the payment terms of the promissory note. Sudderth testified that he, Roger, and Charles had agreed that Charles did not have to make payments on the note until the Birmingham project had realized a positive cash flow, and that Charles could pay what he could, based on the cash flow of the project, with the first $500 of any payment *Page 332 
being applied to interest on the note, and the balance of the payment being applied to principal. Sudderth further testified that he treated the payments made by Charles in accordance with the payment terms as modified.
Sudderth, again over Helen's objection, was allowed to testify regarding his final accounting and the accounting method he had used as trustee. He stated that he had received from Charles payments totalling $32,000, of which he had allocated $7,500 to interest and $24,500 to principal. Sudderth testified that when he resigned as trustee, only $35,000 was left owing on the note.
When questioned concerning the portion of his accounting entitled "Reconciliation of Principal and Interest on Note", which showed that the total amount due on the note was $62,500, Sudderth explained that, at the time of the accounting, the note was in default and that when a note is in default the interest stops "running" on it. He stated that he multiplied the total number of months that he was trustee by $500, because the agreement was that Charles could pay only $500 in interest if he chose to, and that the interest due in the reconciliation portion of the accounting represented a straight-line mathematical compilation of the life of the note past the default up to the time of the accounting, and does not represent what was actually left owing on the promissory note. Sudderth further testified that by Charles's having made prepayments of interest before they came due, he discontinued any further interest computations, thereby, reducing the amount of the note from $62,500 to $35,500 as he allocated $7500 to interest, and $24,500 to the reduction of principal.
 Dead Man's Statute
The purpose of the Dead Man's Statute is to prevent a witness who has a pecuniary interest in the estate of a deceased person from testifying as to transactions with, or statements made by, the deceased. Friar v. McCrary, 578 So.2d 1249 (Ala. 1991). In order for the Dead Man's Statute to apply and exclude a witness's testimony, or to render that testimony incompetent, the following criteria must be met: (1) the testimony must concern a transaction with or a statement by a person now deceased; (2) the outcome of the action will affect the decedent's estate; (3) the witness must have a pecuniary interest in outcome of the suit; (4) the interest of the witness must be adverse to the interest of the decedent's estate. McDaniel v. Laminack, 603 So.2d 1010 (Ala. 1992). In order for a pecuniary interest to exclude testimony, or render it incompetent, that interest must be present, certain, and vested, not uncertain, remote, or contingent. MassachusettsMutual Life Ins. Co. v. Collins, 575 So.2d 1005 (Ala. 1990),cert. denied, 499 U.S. 918, 111 S.Ct. 1306, 113 L.Ed.2d 240
(1991). As the former trustee, Sudderth has no present, certain, or vested pecuniary interest in the outcome of the action. Sudderth is not a party to the action and stands to gain no pecuniary benefit from its outcome. See Hulsey v.Folsom, 286 Ala. 474, 241 So.2d 889 (1970). Sudderth simply has no pecuniary interest in the outcome of this action; therefore, the third criterion necessary to invoke the Dead Man's Statute is not satisfied.
Additionally, the fourth criterion necessary to invoke the Dead Man's Statute is not satisfied, because Sudderth's interest is not adverse to that of Roger Stephens's estate. To exclude a witness's testimony under the Dead Man's Statute, the adverse interest of the witness must exist "at the time of [the] transaction or statement" of the deceased. Lavett v.Lavett, 414 So.2d 907 (Ala. 1982), overruled by McBride v.McBride, 548 So.2d 155 (Ala. 1989). At the time of any transactions or statements by Roger concerning the modification of the payment terms of the promissory note, Sudderth served as the trustee of the trust created by Roger. As trustee, he owed certain fiduciary duties and could be held liable for any breach of those duties. Sudderth's interest, rather than being adverse to Roger's interest, was necessarily aligned with it. The fourth criterion necessary to invoke the Dead Man's Statute, therefore, was not met. Because the criteria necessary to invoke the Dead Man's Statute were not met, the court erred in excluding, or failing to consider, the testimony of Sudderth, *Page 333 
based on the Dead Man's Statute, in entering its judgment.
 Parol Evidence Rule
The parol evidence rule provides that "absent some evidence of fraud, mistake, or illegality, a party to an unambiguous written contract cannot offer parol, or extrinsic, evidence of prior or contemporaneous oral agreements to change, alter, or contradict the terms of the contract." Environmental Systems,Inc. v. Rexham Corp., 624 So.2d 1379, 1381 (Ala. 1993). By definition, the parol evidence rule excludes only evidence of prior or contemporaneous agreements, and it has no application to subsequent agreements. Bell v. Washington, 373 So.2d 865
(Ala.Civ.App. 1979); H.C. Schmieding Produce Co. v. Cagle,529 So.2d 243 (Ala. 1988). Sudderth testified that, following the execution of the promissory note, he, Charles, and Roger agreed to a modification of its payment terms. Because this agreement to modify the payment terms of the promissory note occurred after the execution of the note, the parol evidence rule would not operate to exclude testimony concerning it. The court, therefore, erred in excluding, or refusing to consider, Sudderth's testimony, based on the parol evidence rule.
 Statute of Frauds
Alabama's Statute of Frauds provides, in part:
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
 "(1) Every agreement which, by its terms, is not to be performed within one year from the making thereof. . . ."
§ 8-9-2, Ala. Code 1975. The general rule is that a contract cannot be modified by a subsequent oral agreement if that contract falls within the Statute of Frauds. Charles J. Arndt,Inc. v. City of Birmingham, 547 So.2d 397 (Ala. 1989); Cammoratav. Woodruff, 445 So.2d 867 (Ala. 1983). In order to bring a contract within the scope of § 1 of the Statute of Frauds, quoted above, the agreement must not be capable of being performed within one year. Hill v. Raney Ins. Agency ofAnderson, Inc., 474 So.2d 738 (Ala.Civ.App. 1985); Hornady v.Plaza Realty Co., 437 So.2d 591 (Ala.Civ.App. 1983). Our supreme court stated in Land v. Cooper, 250 Ala. 271, 276,34 So.2d 313, 318 (1948):
 "In Brown Sons Lumber Co. v. Rattray [238 Ala. 406, 192 So. 851 (1939)], this court approved the statement from 25 R.C.L. 454, § 29, that to bring a contract within the operation of this clause of the statute there must be an express and specific agreement that it is 'not to be performed within the space of a year; if the thing may be performed within the year, it is not within the statute, a restricted construction being given to the statute on account of the negative form of the provision. A contract is not brought within the statute by the fact that the full performance within a year is highly improbable, nor by the fact that the parties may not have expected that the contract would be performed within the year. This is said to be true if there is a possibility of its being performed within a year, and there is no stipulation that it shall not be so performed.' (238 Ala. [at] 410, 192 So. [at] 854)."
The payment terms of the promissory note prior to its modification read as follows:
 "The undersigned, for value received, promise to pay to the order of Attorney John W. Sudderth, Trustee of Jennifer and Lee Stephens the sum of Sixty Thousand ($60,000) Dollars together with interest upon the unpaid portion thereof from the date at the rate of 10 per cent per annum, in monthly installments of Fifteen Hundred Dollars, payable on the 1st day of each month after date, commencing 11/1/88 until said sum is paid in full."
These terms make the note payable over a period of five years; however, the promissory note is capable of being paid within one year from the date of its making, as there is no provision contained in the note that would prevent its full payment or satisfaction within one year. The note contains no express agreement or stipulation by the parties that *Page 334 
prevented Charles from fully performing within a one-year period. Because the note was capable of being performed within one year, it is outside the scope of the Statute of Frauds and, therefore, could have been orally modified by the parties. SeeDuncan v. Rossuck, 621 So.2d 1313 (Ala. 1993). Additionally, the payment terms of the promissory note, as modified, were not required to be in writing, because they, too, were capable of being performed within one year. The promissory note did not fall within the operation of the Statute of Frauds, and the parties could orally modify the note. The court, therefore, erred in using the Statute of Frauds as a basis for failing to consider Sudderth's testimony regarding the modification of the payment terms of the promissory note.
The court erred in refusing to consider the testimony of the trustee, John Sudderth, based on the Dead Man's Statute, the parol evidence rule, and the Statute of Frauds. We, therefore, reverse the judgment and remand the case for the trial court to consider Sudderth's testimony before entering its judgment.
The appellee's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and CRAWLEY, J., concur.